UNITED STATES of America,
Plaintiff-Appellee,

v.

Abraham MAIUS, Defendant-Appellant.

No. 16981.

United States Court of Appeals
Sixth Circuit.

June 15, 1967.

William J. Dammarell, Cincinnati, Ohio, for appellant.

Donald A. Hansen, Tax Division, Dept. of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Richard B. Buhrman, Attys., Dept. of Justice, Washington, D. C., on brief; Ernest W. Rivers, U. S. Atty., Louisville, Ky., of counsel, for appellee.

Before CELEBREZZE and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

The Glen Corporation of Newport, Kentucky, operated a gambling place, as well as the Glen Rendezvous and Tropicana, consisting of a hotel, restaurant, bar and night club.

When, in August 1962 and October 1963, Internal Revenue agents investigated the income tax returns of the Glen Corporation, appellant Maius, who, among other positions he held in the organization, was one of the managers, explained to the agents the accounting procedures of the corporation. He stated that he prepared a daily sheet, which was used by one of the defendants in this case, Tito Carinci, in making entries in a book, which he identified as the record

of "casino net wins and losses" for the years 1959 and 1960.

"Gambling loss collections," as the phrase is used in this case, are collections made by banks for the benefit of the Glen Corporation, on checks given by gamblers in payment of their gambling losses. The Government showed that these gambling loss collections paid by the bank to the Glen Corporation amounted to $207,342.67 for 1959, and $144,435.-21 for 1960. However, the amount of these same collections was set forth in the Glen Corporation's income tax returns as $73,900 for 1959, and $46,968 for 1960.

As a result, the corporate income was understated on the income tax returns by $133,442.67 for 1959, and by $97,467.21 for 1960.

The additional tax due on the above unreported income was $69,309.14 for 1959, and $46,585.72 for 1960.

Appellant, before being employed by the Glen Corporation, had considerable experience as a restaurant manager. He was hired by the corporation to manage the bar and the restaurant. He also helped to manage the company and to do a large amount of its banking business. He was issued 415 shares of Glen Corporation stock on March 4, 1959, and this certificate was later canceled, and a new certificate was issued to him for 115 shares.

As a result of the investigation of the corporation by the Internal Revenue Service, eight persons were indicted, including the appellant. On July 26, 1965, appellant and Tito Carinci were tried for willfully attempting to evade income taxes of the Glen Corporation for the years 1959 and 1960, in violation of Section 7201 of the Internal Revenue Code of 1954, and for willfully and knowingly aiding and assisting in preparing fraudulent income tax returns of the Glen Corporation for the years 1959 and 1960 in violation of Section 7206(2) of the Internal Revenue Code of 1954. The jury found appellant guilty on four counts

of the indictment and he was thereafter sentenced to concurrent prison terms of three years and fined a total of $15,000.

The main issues as stated by appellant are: (1) Did the district court use prejudicial coercion on the jury in forcing it to find on three extra counts after it had indicated a finding on one count? (2) Was there sufficient evidence to sustain the verdict? (3) Were statements which appellant made to Internal Revenue agents properly admitted in evidence when the agents, who had advised appellant of his rights under the Fifth Amendment, did not inform him that he could have an attorney present during the interviews?

■ The first contention of appellant that the district court used prejudicial coercion in forcing the jury to find on three counts after it had indicated a finding on another count, is based upon the court's having given a so-called Allen charge * in the following language:

"Let me say this to you, members of the jury. The chances are that without a finding on these other counts that this defendant would have to be retried on the counts upon which this jury has not yet agreed. Of course, you realize that—the time required and the costs, not only to the Government but to the parties, of a trial of this nature. You realize further that these same facts substantially would have to be given to another jury, another four days in a trial, perhaps more, would result, and certainly the next jury that would consider this case is no more able to determine it than you ladies and gentlemen are, having —knowing that they will hear substantially the same evidence. And certainly they would be no more intelligent than you ladies and gentlemen are.

"Now, it is true that, and the Court does not desire that any juror should surrender his own conscientious convictions, but, on the other hand each juror in order to perform his duty must perform it conscientiously and

* Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

honestly and, of course, according to the law and the evidence and, although the verdict, and each verdict, to which a jury agrees must be his own verdict and the results of his own convictions and not a mere acquiescence in the conclusions of his fellow jurors, yet, as I told you when you were first qualified as jurors, it's often difficult to bring twelve minds to a unanimous result. And in order to do so, of course, you are required and must examine the questions presented with candor, and certainly with a proper regard and deference to the opinions of each other.

"Now, I—do you think there is an opportunity or a chance that you might be able to reach a verdict on these other counts? I'd appreciate it very much if you would undertake to consider them further and see whether or not you can reach a verdict."

The charge as given would be proper in an attempt to secure some kind of a verdict as to innocence or guilt. Appellant says that the jury had already reported its view as to innocence or guilt on one count—Count 4. But this is not the case. The jury rather stated that it had found on Count 4, but that it was hopelessly deadlocked on Counts 2, 3, and 5. It did not, however, state whether it had found appellant guilty or not guilty on Count 4. If its verdict had been not guilty on Count 4, the trial court was correct in stating that the case would have to be retried on the other counts. Counts 2 and 3 charged an attempt to evade and defeat income taxes. Counts 4 and 5 charged willfully and knowingly aiding and assisting in preparing a false income tax return. We see no violation of appellant's rights in the court's giving the so-called Allen charge.. This is not a refusal of the trial court to receive a verdict on a lesser charge, and sending the jury back to attempt to reach a verdict on a higher charge. There is no evidence that the court applied pressure to increase a verdict which it had already agreed upon. No specific finding or verdict had been announced by the jury—

only a statement by the jury of a finding, without a statement what that finding was; and there was no knowledge on the part of the court or anyone else—except the jury as to what the finding was. We find no error in the charge of the trial court.

Appellant contends that there was not sufficient evidence to sustain the verdict. An examination of the record shows that there was evidence from which the jury could find that appellant was involved in conduct to conceal the actual receipt of the corporate income, and in accounting for it. As mentioned, he did most of the banking business for the corporation. He was the bookkeeper in respect to the customer checks, and maintained a list of the checks taken to the bank for collection. He also kept track of the collections and posted them on the records which were used in the preparation of the corporate tax returns.

■ The testimony further disclosed that appellant had examined the 1959 and 1960 income tax returns before they were filed. The fact that appellant did not sign or file the tax returns is not material. There was sufficient evidence to support the conclusion of the jury that appellant was a party to the scheme of concealing the receipt of income and not reporting it on the corporate records, and this his knowledge of the use of such records in preparing the tax returns is sufficient, under all of these circumstances, to sustain the charge that he willfully and knowingly aided, assisted, and counseled in the preparation and presentation to the Internal Revenue Service of the false returns.

■ With regard to the contention that statements made by appellant to the Internal Revenue agents were improperly admitted in evidence, when the agent, who had advised him of his rights under the Fifth Amendment, did not inform him that he could have an attorney present during the interview, we find no error. Appellant was not under arrest or under duress in the legal sense of the term when he made the statements in

question. A doubt may well assail us as as to whether it is fair to a citizen to be summoned before the Internal Revenue agents to be informed that anything he says may be used against him, and then for the agents of the Internal Revenue Service, personifying the authority and punitive nature inherent in law enforcement, to subject a man to questioning and to extract possibly by threats, insinuations, or subtle forms of suggestive coercion, the only evidence on which he can be sent to prison, and to use this evidence to send him to prison. It would seem, in all fairness, that before he answers such questions and thereby directly incriminates himself, he should be advised of his right to have his lawyer present. The Internal Revenue Service has lately been subjected to widespread criticism, because of trickery of some of its agents in unconstitutional invasion of a citizen's rights by the use of tapped telephone wires, or "bugging"; and the Commissioner has repudiated and castigated such conduct. No one would believe, however, that a man would appear before government agents, and answer their questions, if he knew that the effect of his answers would be to send him straight to the penitentiary. But whether fair or not, no court has held that a man who is not advised of his right to have his attorney present when questioned by an Internal Revenue agent is thereby deprived of his constitutional rights. A citizen summoned before such federal agents has the option to refuse to answer their questions; but there are few who have the toughness of fibre and the technical knowledge of their rights, who would decline to answer questions put to them in these circumstances. Until we are told by superior authority that a citizen's constitutional rights are imperiled by such procedure, we are constrained to hold that the evidence thereby obtained is admissible in the ensuing criminal trial.

In accordance with the foregoing, the judgment of the district court is affirmed.