**W. Aborn SPINNEY, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6910.**

United States Court of Appeals First Circuit.

Nov. 16, 1967.

Certiorari Denied Jan. 29, 1968.

See 88 S.Ct. 854.

Daniel B. Bickford, Boston, Mass., with whom John F. Kehoe and Ely, Bartlett, Brown & Proctor, Boston, Mass., were on the brief, for appellant.

John M. Callahan, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant, Dr. Spinney, a practicing dentist, appeals his conviction by a jury on a two count indictment charging him with income tax evasion [1] for the years 1958 and 1959.[2] He admits that he understated his taxable income for the years in question but contends that the government's proof of willfullness was not sufficient to sustain a conviction. He also contends that prior to and during trial his constitutional rights were vio-

---

[1] 26 U.S.C. § 7201. *Attempt to evade or defeat tax*

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

[2] Both counts charged the defendant with willfully and knowingly attempting to evade and defeat a large part of his and his wife's income liability by filing false and fraudulent joint tax returns for the years in question. Count 1 charges that the reported taxable income of the defendant and his wife for 1958 was $1,443.82 and their reported tax liability $430.51, whereas the correct taxable income was $16,923.09 and the tax $4,375.60. Count 2 alleges that their reported taxable income for 1959 was $1,412.54 and their reported tax liability $462.51, whereas the correct taxable income for that year was $10,160.24, with a tax liability of $2,421.-66.

lated. We shall consider this latter contention first.

For several years prior to indictment the Internal Revenue Service (I.R.S.) investigated defendant's income tax liability for the years in question, interviewed him at home as early as December 1960 and in March 1964 wrote a letter inviting him to appear for a formal interview.[3] In response to this letter defendant went to the I.R.S. office in Boston on April 1, 1964, and was interviewed. A stenographic transcript was made, the relevant portions of which are as follows:

"1. Mr. Reale: Doctor Spinney, you recently received a letter inviting you to come here today, if you so chose, for a Formal Interview. Is that right?

Dr. Spinney: Yes.

2. Q. Doctor Spinney, the purpose of this interview, if there is to be one, is to afford you the opportunity to offer any explanations, or submit any evidence you might choose to submit. You should understand if you do make any statements, or submit any evidence, these statements must be made under oath, and you should be cognizant of your constitutional guarantee against self-incrimination. Is that perfectly clear to you, Doctor?

A. I think so.

3. Q. Are you aware of your rights under the Fifth Amendment, that you cannot be compelled to testify against yourself?

A. No, but that doesn't interest me. I don't know why it should. Go ahead. If you should bring up a problem I will let you know. As far as I'm concerned, I am ready to listen and see what happens.

4. Q. Doctor, the subject matter is your Income Tax Liability for the years 1958 and 1959. Now do you wish to be heard?

A. Do I wish to be what?

5. Q. Do you wish to be heard, or to make an explanation with regard to your 1958 and 1959 Income Tax Returns, and the liability that was shown thereon as you filed them?

A. Yes. Certainly.

6. Q. Do you want to stand and be sworn? Doctor Spinney, do you solemnly swear that your testimony here today will be the truth, the whole truth and nothing but the truth, so help you God?

A. Yes."

Prior to trial defendant moved to suppress the transcript of the interview and the evidence obtained by the I.R.S. as a

---

3. The I.R.S. letter to the defendant, dated March 10, 1964, reads as follows:
"Dr. W. Aborn Spinney
277 Woburn Street,
Reading, Massachusetts
Dear Sir:
Investigation by the Intelligence Division of your personal income tax liability for the years 1958 and 1959 is nearing completion.
Consideration is being given to a possible recommendation criminal proceedings be instituted against you.
Before a decision is made, you are invited to appear, with counsel, if you so desire, or with any other person having knowledge of the facts for a formal interview to be held at 10:00 A.M. on March 19, 1964 in Room 947, 55 Tremont Street, Boston, Massachusetts.
Richard T. Reale, Group Supervisor, will conduct the interview, at which time you may present facts or evidence you wish to have considered.
You are requested to inform this office promptly whether it is your intention to appear for the proposed interview. It is important your reply or any inquiry be addressed to the District Director of Internal Revenue, Attention: Acting Chief, Intelligence Division, Post Office Box 202, Boston, Massachusetts 02101.
Very truly yours,
HAROLD L. SMITH
*Acting Chief*, Intelligence Division"

result of it.[4] This motion was denied. United States v. Spinney, 264 F.Supp. 774 (D.Mass.1966). At the trial the transcript of the interview was admitted in evidence. On appeal, defendant contends that the trial court erred in denying his motion to suppress and that the admission in evidence of the transcript as well as the fruits of the April 1 interrogation violated his Fifth Amendment rights. Specifically he complains that in neither the letter nor the interview was he given the required warnings enunciated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), that he had a right to remain silent at the proposed interview and also that anything he said could be used as evidence against him.

▆ Miranda involved a custodial interrogation. To be sure, the Court said in that case that custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way.*" Miranda, supra at 444, 86 S.Ct. at 1612 (emphasis supplied) Clearly, however, this defendant was not deprived of his freedom of action at all. He was not compelled to appear at the interview or answer questions. He did both voluntarily. In this circuit we have recently held that whatever the limits of Miranda, it does not extend to a factual situation such as is presented here. Morgan v. United States, 377 F.2d 507 (1st Cir. 1967). Although in Morgan defendant complained that he was not warned of his right to counsel, our holding in that case is not based on such a narrow factual distinction. Morgan stands for the proposition that where one is legally free, albeit at the risk of unpleasant consequences, to reject the government's invitation to appear and participate in an I.R.S. interview, the requirements enumerated in Miranda do not apply. We think the observations we made at 508 in Morgan apply with equal force here.

" * * * the background of Miranda demonstrates that it was the product of the Court's concern with the difficulty of protecting persons in the custody of the police from coercive interrogation tactics carried on in secret. See Developments in the Law—Confessions, 79 Harv.L.Rev. 935, 954–1022 (1966). That, of course, is not this case. Defendant makes no assertion, nor could he, that he was not free to walk out of the Internal Revenue office at any time. Nor is there any suggestion of trickery or fraud.

"There must be reasonable limits to the solicitude required of the government. * * * *"

Therefore, we find no merit in this contention.[5]

Nor are we impressed by defendant's claim that there was not sufficient evidence of willfullness to withstand his motion for judgment of acquittal. It is uncontested that there was an understatement of gross receipts. As above stated, it is only the question of willfullness that defendant contests. In support of this contention he cites his cooperation with the I.R.S. investigation to show his lack of intention to defraud. Even if true, this can hardly be considered proof

---

4. This included:
    All records and copies of records obtained from the defendant including, but not limited to:
    a. Daily sheets and copies of daily sheets relating to the defendant's dental practice;
    b. Check books and copies of check books dealing with the defendant's bank accounts at the Middlesex County National Bank, Winchester National Bank and the Meredith Trust Company;
    c. Invoices obtained from the defendant relating to expenses;

    d. Any other records obtained from the defendant or his agents without informing the defendant of his Constitutional rights and more particularly, his right not to incriminate himself.

5. Defendant in his brief relies on the recent case of United States v. Kingry, 19 Am.Fed.Tax R.2d 762 (N.D.Fla.1967). We call attention to the fact that in Morgan 377 F.2d at 508 we expressly declined to follow that case. See also, United States v. Maius, 378 F.2d 716 (6th Cir. 1967), cert. denied, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219.

of his innocence. Otherwise, anyone accused of this crime could assure his acquittal by cooperating with the investigating authorities regardless of what the investigation might uncover.

"Wilfulness is, of course, a question of fact. But direct proof thereof is not essential. It may be inferred from acts and circumstances, and the inference may be drawn from a combination of acts and circumstances, although each separate act and circumstance standing alone is inconclusive." Gaunt v. United States, 184 F.2d 284, 290 (1st Cir. 1950), cert. denied, 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662 (1951). The real question here is whether there is sufficient evidence from which the jury could reasonably infer defendant's willfullness. We think that there is. There is evidence that defendant understated his gross receipts on his 1958 tax return by $11,248 and on his 1959 return by $3,173.38.[6] His accountant, one Lewis, testified that he obtained the figures on Dr. Spinney's gross receipts for the two years in question from monthly totals furnished by Dr. Spinney himself.[7] Lewis further stated that he merely added these monthly totals but did not check their accuracy from the daily sheets. These sheets which were examined by the I.R.S. support the understatements of gross receipts as defendant subsequently admitted. The jury was entitled to consider the unlikelihood of a man who had shown a keen interest in knowing whether his practice was increasing being unaware of his gross income during these years.

In addition, it was shown that defendant substantially overstated his deductions for dentures, dental supplies and other professional expenses.[8] There is evidence that he paid these bills himself, that he did this by check and that the only information the accountant had on these expenses was what he obtained from the defendant.[9]

Defendant's entertainment deductions of $722 taken in 1958 and $825 in 1959, although relatively small, are nevertheless of particular significance on the issue of intent. I.R.S. agent Rosenberg testified that when he asked Dr. Spinney if he could explain and substantiate these deductions, he replied "No. Everyone else takes them. So can I." In this connection defendant's accountant testified that in discussing entertainment expenses for the years in question, he told defendant that certain of these expenses were deductible but warned that they would have to be substantiated in case of inquiry.

■■ From all of the above stated evidence, we think the jury could reasonably infer that this defendant knowingly and willfully understated his gross receipts and overstated his deductions in an attempt to evade his income tax liability for the years 1958 and 1959.[10]

Affirmed.

---

6.

| | Reported gross | Actual gross |
|---|---|---|
| 1958 .. | $29,326.00 | $40,574.00 |
| 1959 .. | $32,838.00 | $36,011.38 |

7. He said that Dr. Spinney placed the daily sheets showing payments by patients in monthly groupings with the total for the month written on a piece of white paper placed on the top of each stack.

8.

| | Claimed expenses | Actual expenses |
|---|---|---|
| 1958 .. | $6,829.96 | $3,076.39 |
| 1959 .. | $7,486.92 | $3,513.41 |

9. Lewis testified that Dr. Spinney sat at a table reading figues from his check stubs and informed Lewis of the purpose of the checks, all of which information Lewis wrote down.

10. Defendant also raises the point that the trial judge erred in refusing to give three requested instructions with reference to deductible expenditures not reflected on his returns. The only such item involved is fees allegedly paid to his accountant. The accountant testified that he received nothing for preparing the 1958 and 1959 returns and Dr. Spinney's own records do not reflect any such payment, but he claims payments to his accountant of $150 a year during these years. Even if true, a deduction of such a small amount would have no substantial effect on defendant's taxable income and could not affect the outcome of the case. Therefore he was not entitled to such an instruction. United States v. Bender, 218 F.2d 869 (7th Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955); cf. Small v. United States, 255 F.2d 604 (1st Cir. 1958).