**UNITED STATES of America,
Appellee,**

v.

**Hilton G. BROWNEY, Appellant.**

**No. 13153.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1969.

Decided Jan. 5, 1970.

L. S. Parsons, Jr., Norfolk, Va. (Parsons, Steffen & Moore, Norfolk, Va., on brief) for appellant.

Roger T. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief) for appellee.

Before SOBELOFF, BOREMAN and BUTZNER, Circuit Judges.

BOREMAN, Circuit Judge.

Hilton G. Browney appeals from his conviction on charges of willfully failing to file income tax returns for the years 1961, 1962 and 1963, in violation of 26 U.S.C. § 7203. He was tried by the court without a jury on November 6, 1968, and found guilty on all three counts. He was fined a total of $5,000 and sentenced to imprisonment for one year on each of the three counts, with a direction to serve a total of only thirty days, the remainder of the term being suspended.

Browney filed timely income tax returns for the years 1954, 1956 and 1957. Internal Revenue Service (hereinafter IRS) records fail to show that he filed a return for 1955, but these records do establish that he paid a total of $400 on his declaration of estimated tax for that year. His 1958 return, which was due on or before June 15, 1959, was filed on March 7, 1961, after he had been approached by IRS agents and interrogated concerning his 1958 return and after he had been assisted by these agents in preparing the 1958 return. Browney attached an affidavit to this return stating that he had prepared and mailed a 1958 return to the best of his knowledge by June 15, 1959. Testimony of Carl Schell, an IRS supervisor, indicated that he had called on Browney on March 6, 1961, that he had assisted Browney in preparing his 1958 tax return and that Browney stated that he had mailed the 1958 return earlier. Schell corroborated the fact that Browney had filed a request for an extension of time for filing his 1958 return but stated that the return itself had never been received by IRS.

When asked about his 1959 and 1960 returns, Browney told Schell that he had filed his 1959 return, that his 1960 return was in the process of preparation by an accountant and that it would be filed by its due date.

No further returns were filed by, nor were any payments received from, Browney for the years 1959 through 1963, inclusive. His 1964 return was filed on September 15, 1965.

Between 1960 and 1965, Browney was an officer of corporations owned or controlled by him. In that capacity during these years he filed corporate tax returns over his signature except one return which was signed by his wife as president of the corporation.

Browney's next contact with IRS occurred on September 26, 1963, when another revenue officer, Benjamin Daughtery, inquired about his returns for 1959 through 1961. No warnings as to any constitutional rights were given at this time, and Browney admitted that he had not filed returns since 1958 and said that he needed help with his tax problems, although he did not request assistance from agent Daughtery.

The matter was referred to the Intelligence Division of IRS in March 1964 as Special Agent William Conner was assigned to conduct an investigation to determine whether there had been any violation of Internal Revenue laws. Conner's first contact with Browney occurred on July 20, 1964, when Conner and another IRS agent, Leo Fuentes, interviewed Browney at his home. The agents identified themselves and advised Browney that he had a right to remain silent or refuse to answer any questions which he felt would incriminate him. He was not advised at this time of his right to consult an attorney. Browney furnished records and information to the agents.[1] During the course of the interview Browney accompanied the agents to a bank where an inventory was made of the contents of his safe deposit box. Toward the end of the interview Browney asked if he might tell his friends that this was a routine matter. Although he was not specifically told that the investigation could lead to criminal charges he was advised that he could tell his friends whatever he desired but that the agent wanted him to understand that the investigation was not routine.

Two additional meetings were held during 1964, at which Browney was advised of his right to remain silent, but a right to the presence and advice of counsel was not mentioned. He furnished records and information on each of these occasions.

The next meeting occurred on July 11, 1966, at Browney's office building, at

1. Agent Fuentes testified at trial in response to a leading question from defense counsel that Browney conveyed the idea that he was relieved that IRS agents had arrived and that he wanted to get his taxes straightened out.

which meeting Browney was advised of his right to remain silent and of his right to assistance of counsel, in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), decided by the Supreme Court on June 13, 1966. At this meeting, Browney again furnished records and information.

On October 11, 1966, Browney called Special Agent Conner and asked if he could tell his bank that the investigation was routine. Conner advised him that the matter was not routine by virtue of the fact that the Intelligence Division was conducting the investigation. Browney was not told specifically that the investigation could lead to criminal charges against him.

Another meeting was held October 24, 1966, at Browney's home. At this meeting Browney was again advised of his right to remain silent and of his right to the presence and advice of counsel. He again furnished records and information.

On April 3, 1967, a formal question and answer statement was taken from Browney at the IRS office. Prior to the taking of this statement, Browney was advised of his right to remain silent and not answer any questions which he felt would incriminate him and of his right to have counsel present. When asked if he understood those rights, he replied, "Yes, sir."

Special Agent Conner testified that only about five per cent of the cases investigated by the Intelligence Division result in the filing of criminal charges, and that the decision to recommend prosecution of Browney was reached sometime after the taking of Browney's statement on April 3, 1967.

Browney's taxable income was computed at $47,438.48 for 1961, at $20,028.-81 for 1962, and at $38,770.07 for 1963 and a criminal information was filed on February 16, 1968, charging Browney with willful failure to file tax returns for those years.

On April 1, 1968, Browney filed a motion to quash the indictment, alleging that he had been denied his Fifth and Sixth Amendment rights during the course of the investigation. By agreement of counsel, the motion to quash was treated as a motion to suppress evidence which had been improperly obtained. After hearing evidence and argument of counsel in open court, the court denied the motion to suppress on June 27, 1968. The trial was held November 6, 1968.

Upon appeal, Browney contends: (1) that the trial court erred in ruling that the government proved that Browney had willfully failed to file his tax returns and (2) that the trial court erred in overruling the motion to suppress evidence because the agents did not reveal to Browney that they were conducting a criminal investigation and because Browney did not knowingly and voluntarily waive his Fifth and Sixth Amendment rights.

█ As to his claim that he did not *willfully* fail to file the tax returns Browney maintains that he did not intend to defraud the United States Government and that he did intend to pay his taxes, once IRS agents arrived to assist him in preparing his tax returns. He asserts that his failure to file tax returns resulted from procrastination and that although such failure was "not too intelligent" it was not a willful statutory violation. This contention is wholly without merit. The evidence is uncontroverted that Browney knew he was required to file tax returns. He did file them in 1954, 1956, 1957 and 1964. During the time he was failing to file his personal tax returns, he filed numerous corporate returns over his signature. He obtained an extension of time for filing his 1958 return. When questioned in 1961 about his 1959 and 1960 returns, he told IRS agents that he had filed his 1959 return and that he was then having the 1960 return prepared by an accountant. The evidence clearly establishes his knowledge that he was required to file

yearly tax returns and supports the finding that his failure to do so was a willful violation of 26 U.S.C. § 7203.

As to his second assertion of error Browney relies heavily upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in claiming that his Fifth and Sixth Amendment rights were violated during the course of the agents' investigation.

■ In a situation in which a taxpayer is interrogated while he is in actual custody, *Miranda* is applicable and the *Miranda* warnings must be given prior to the interview. Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L. Ed.2d 381 (1968). However, *Mathis* has no application here since Browney was not in custody at the times of the interviews. The *Miranda* decision was intended to apply to interrogation of a suspect then in custody and to prevent coercion by interrogators when a suspect is "otherwise deprived of his freedom of action in any significant way." As the Court stated in *Miranda*, 384 U.S. at page 444, 86 S.Ct. at page 1612:

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, *stemming from custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.*" (Emphasis added.)

The law in this circuit is clear that one is not entitled to notice of a right to counsel prior to an interview during which he is neither in custody nor "deprived of his freedom of action in any significant way" and where there is no evidence of coercion or intimidation on the part of the tax agents conducting the interview. United States v. Bagdasian, 398 F.2d 971 (4 Cir. 1968); United States v. Webb, 398 F.2d 553 (4 Cir. 1968); United States v. Mancuso, 378

F.2d 612 (4 Cir. 1967). As we said in *Webb, supra,* 398 F.2d at 557:

"[T]he question is whether to extend the *Miranda* doctrine to this non-custodial interrogation which was not actually or potentially coercive or intimidating.

"We do not interpret the *Miranda* mandate so broadly as to include these circumstances. To equate them to a *Miranda* situation would be to ignore the language and the underlying concept of the Court's opinion."

In *Bagdasian, supra,* we upheld a lower court's denial of a motion to suppress evidence obtained during a noncustodial interview conducted by IRS agents.

In *Mancuso, supra,* 378 F.2d at 619, we stated:

"But *Escobedo* and *Miranda* do not apply to a tax audit, i. e., an investigation by revenue agents of a taxpayer's tax returns and records for the purpose of determining whether or not additional taxes are due and whether or not a crime has in fact been committed. [Citation omitted.] Neither suggest a duty to warn one who, like the defendant, is *not* under arrest and whose freedom of action is not curtailed."

The Seventh Circuit recently held in United States v. Dickerson, 413 F.2d 1111 (September 9, 1969), that an IRS agent must give *Miranda* warnings to a taxpayer who is undergoing an investigation before he is interviewed, even though the taxpayer is not in custody and there has as yet been no decision made as to possible prosecution. However, prior to the *Dickerson* case, every other federal appellate court which had decided this issue had held that *Miranda* does not require an IRS agent to advise a taxpayer of his right to counsel prior to noncustodial interviews and interrogation. Hensley v. United States, 406 F.2d 481, 484 (10 Cir. 1968); Cohen v. United States, 405 F.2d 34, 40 (8 Cir. 1968), cert. denied, 394 U.S. 943, 89 S. Ct. 1274, 22 L.Ed.2d 477 (1969); United States v. Squeri, 398 F.2d 785, 790 (2

Cir. 1968); Spinney v. United States, 385 F.2d 908, 910 (1 Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L. Ed.2d 981 (1968); United States v. Maius, 378 F.2d 716, 718–719 (6 Cir. 1967), cert. denied, 389 U.S. 905, 88 S. Ct. 216, 19 L.Ed.2d 219 (1967); Morgan v. United States, 377 F.2d 507, 508 (1 Cir. 1967).

■ In light of the overwhelming majority of authorities from other circuits and our own prior decisions, we hold that a taxpayer is not entitled to be notified of a right to counsel prior to interrogation such as here involved where the taxpayer is not in custody or "deprived of his freedom of action in any significant way" and there is no evidence of coercion or intimidation on the part of the tax agents who conducted the interview.[2] Since Browney was not entitled to notice of a right to counsel and since, before all interviews, he was informed of his right to remain silent, we conclude that he was not deprived of Fifth or Sixth Amendment rights during the IRS investigation.

Affirmed.

SOBELOFF, Circuit Judge (concurring).

It is vitally important to bear in mind the context that generated Browney's case. It is one of those arising in the twilight zone created by Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966): the disputed interviews occurred prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), but the trial was commenced after that date. At the time of the investigation the IRS was doing all it was obligated to do under pre-*Miranda* law, and perhaps even more. Present IRS policy, as evidenced by what happened in this case *after* the *Miranda* decision, is to accord full warnings to all suspects, even those not in custody. *See* Hensley v. United States, 406 F.2d 481, 484 n. 2 (10th Cir. 1968).

Thus we seem to be faced with the following dilemma: Shall we condemn as insufficient conduct that by all known rules was exemplary at the time? Or shall we uphold the agents' action and concomitantly hold that today's IRS practice is superfluous? Taking this view of the avenues open to it, the majority chooses the latter alternative. While I concur in the result reached, I find that the dilemma is in fact only apparent and I would take a third course, one which sanctions the events of the past without undermining the present procedure.

The majority correctly recognizes that the *Miranda* mandate to notify the suspected taxpayer of his right to counsel is not limited to custodial situations. It says that *Miranda* is not triggered when an accused is neither in custody, nor deprived of his freedom in any significant way, nor subject to coercion or intimidation. The position that this court takes, as I understand it, would not confine *Miranda* to deprivations of physical freedom, but would include any set of circumstances that robs a person of freedom of will or independence of judgment.

I agree with my brethren as far as they go. However, their approach necessarily involves case-by-case adjudication, and the Seventh Circuit, on the basis of its experience in assessing confessions and admissions elicited in tax cases, has found this technique unsatisfactory. In United States v. Dickerson, 413 F.2d 1111 (7th Cir. 1969), the court upheld a district court ruling that the four *Miranda* warnings must be afforded whenever a tax audit turns into a criminal investigation, even if the taxpayer is not in custody. Judge Cummings, who wrote for the majority, was impressed by the fact that the average citizen often misapprehends the nature of a tax inquiry and unwittingly cooperates to his detriment in the mistaken belief that when his unpaid tax obligation has been

2. It might be noted in passing that, following June 13, 1966, the date of the *Miranda* decision, the IRS agents advised Browney of his right to counsel before each interview.

determined and paid the revenue agents will be satisfied.

The court said,

We understand the teaching of *Miranda* to be that one confronted with governmental authority in an adversary situation should be accorded the opportunity to make an intelligent decision as to the assertion or relinquishment of those constitutional rights designed to protect him under precisely such circumstances.

413 F.2d 1114.

Accordingly the court decided that henceforth *Miranda* warnings would be required "at the inception of the first contact with the taxpayer after the case has been transferred to the Intelligence Division." 413 F.2d 1117.

I disassociate myself from my brethren insofar as they reject *Dickerson.* We need not take a position on *Dickerson* at this time and can easily avoid both horns of our apparent dilemma. Browney was specifically told that he could remain silent or refuse to answer any questions that would incriminate him. He was also informed that the investigation was not routine, and he was thus cautioned on the direction the investigation might take. Even though he was not warned of his right to counsel, he was put on guard of the pitfalls that have given concern to the *Dickerson* court. In the special circumstances of this case—where *Miranda* had not yet been announced and the agents fully performed the constitutional duties of the day—we are not driven, even under *Dickerson,* to hold that the failure to warn of the right to counsel constituted reversible error.

While I am aware that *Dickerson* is not in the mainstream of past decisions, including some in our circuit, I nevertheless find it persuasively reasoned. At least it is entitled to our serious consideration in a future case if and when the question is properly before us. Should a situation arise that calls for a decision on this point, I trust that the court will not deem itself barred from examining the question.