THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JEROME M. MYERS, Defendant-Appellee.

First District (2nd Division)  No. 59840

Opinion filed June 8, 1976.

DOWNING, J., dissenting.

William J. Scott, Attorney General, of Chicago (James B. Zagel and Raymond McKoski, Assistant Attorneys General, of counsel), for the People.

William A. Romanoff and Gust W. Dickett, both of Chicago (Joseph V. Roddy, of counsel), for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

The State of Illinois appeals from an order suppressing evidence. The State proposed to introduce the evidence against defendant Jerome M. Myers (hereinafter Myers) at a trial pursuant to a complaint charging Myers with 12 counts of filing fraudulent Retailers' Occupation Tax Returns. (Ill. Rev. Stat. 1971, ch. 120, par. 452.) Myers' contention, upheld by the court below, is that the evidence in question was fatally tainted by the failure of both an auditor and an investigator from the Illinois Department of Revenue to advise him, prior to their interrogation of him at his place of business, of his constitutional rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. At a hearing on defendant's motion to suppress evidence, held on 5 September 1973, the following testimony was given.

James Whitlock, an auditor with the Field Division of the Illinois Department of Revenue, testified that the Investigations Division of the

Department requested that he audit the books and records of the defendant, who did business as Jerry's Food and Liquors in Chicago. Whitlock first attempted to perform this audit on 1 September 1972. At this time, Myers stated that all of his books and records were in the possession of his accountant. After unsuccessfully trying to obtain the records from Myers' accountant, Whitlock again called upon Myers at his place of business on the morning of 2 October 1972. At this time, Myers produced three Retailers' Occupation Tax returns. Myers declined to hand over additional records, stating that he would prefer the Department to issue an assessment against him. Whitlock then left, stating that a 20% civil penalty for fraud could be assessed and that he would consult with his superiors. Myers indicated that he would seek the advice of his lawyer. That afternoon, Whitlock again inquired whether Myers would present his records, whereupon Myers again declined. On 18 October 1972, Ahitlock returned to Myers' place of business with Jake Lynn, an investigator from the Department of Revenue. At no time did Whitlock advise Myers as to his rights under *Miranda*. Whitlock further testified that he never mentioned that criminal charges could be brought against Myers nor did he know that criminal proceedings were contemplated.

Jake Lynn, an investigator with the Investigations Division of the Illinois Department of Revenue, testified that his job was to investigate cases which might involve fraud against the revenue of the State of Illinois. Generally, such cases would entail criminal prosecution; occasionally, civil liability only would be involved. Lynn stated that the investigation of Myers arose from a survey of potential criminal violations of the revenue laws and that, ordinarily, about one in four of such survey inquiries led to actual prosecution for alleged criminal violations. On 18 October 1972, Lynn accompanied Whitlock to Myers' place of business for the purpose of assisting Whitlock in obtaining Myers' records. Although Lynn informed Myers that he was an investigator with the Department of Revenue, he did not advise Myers of his rights under *Miranda*, nor that Lynn's area of interest was primarily criminal violations. Lynn did not warn Myers that failure to turn over books and records was a misdemeanor. In the course of Myers' conversation with Lynn and Whitlock on 18 October 1972, Myers made several potentially incriminating statements and revealed where he banked.

Myers had not been arrested by either Whitlock or Lynn on any occasion nor was he ever in their custody during the course of the foregoing conversations. Ultimately, the State subpoenaed Myers' banking records. Thereafter a 12-count complaint was filed against Myers on 29 March 1973. On 9 August 1973, the defendant moved to suppress all evidence obtained by the State as a result of the three conversations in

October of 1972. After a hearing on the motion held on 5 September 1973, the court below on 14 September 1973 entered an order suppressing the evidence, finding that *United States v. Dickerson* (7th Cir. 1969), 413 F. 2d 1111, and *United States v. Turzynski* (N.D. Ill. 1967), 268 F. Supp. 847, controlled; that Investigator Lynn interviewed the defendant to determine whether he was subject to criminal liability; and that, since *Miranda* warnings were not given to the defendant, all oral statements made by the defendant in the course of his October, 1972, interviews and all records obtained from the defendant's bank were obtained illegally.

Myers does not contend that his statements were in any way coerced. The State timely filed its Notice of Appeal pursuant to Supreme Court Rule 604(a)(1).

The sole issue presented for review before this court is whether Myers was entitled to a warning of his constitutional rights at the time Department of Revenue Agents interrogated him in October of 1972.

A highly analogous situation has been the subject of much litigation at the Federal level. Under procedures followed by the Federal Internal Revenue Service, Revenue Agents routinely audit many taxpayers' Federal income tax returns. The Revenue Agent, much like Agent Whitlock in the present case, is concerned with the civil liability of the taxpayer. If, however, criminal wrongdoing is suspected, the Revenue Agent may refer the taxpayer's case to a Special Agent from the Intelligence Division of the Internal Revenue Service. The Special Agent, much like Agent Lynn in the present case, is concerned primarily with the criminal liability of the taxpayer.

Under Internal Revenue Service procedures, the Special Agent from the Intelligence Division is required, when he interrogates the taxpayer, to advise the taxpayer of the Agent's position and function as well as to warn the taxpayer that he has the right against self-incrimination, the right to assistance of counsel before he responds, and that anything he says or any information he submits may be used against him. I.R.S. News Releases I.R.—897, I.R.—949, 1975 CCH Stand. Fed. Tax Rptr. R5709. 1148 (hereinafter referred to as "modified *Miranda* warnings".)

Under the investigatory procedures used by the Illinois Department of Revenue, Myers was not required to be given any warnings whatsoever, nor to be advised as to Agent Lynn's function or as to the nature of his inquiry.

The present case is one of first impression in the State courts of Illinois. On the Federal level, every circuit court of appeals, except the Seventh and arguably the Tenth, has held that *Miranda* warnings need not be given to a taxpayer being interrogated under criminal investigation by a Special Agent where the taxpayer is not in the custody of the Internal Revenue Agent or of some other authority and where he has not otherwise

been deprived of his freedom of action in any significant way. *Taglianetti v. United States* (1st Cir. 1968), 398 F. 2d 558, *aff'd on other grounds*, 394 U.S. 316, 22 L. Ed. 2d 302, 89 S. Ct. 1099; *Spinney v. United States* (1st Cir. 1967), 385 F.2d 908, *cert. denied*, 390 U.S. 921, 19 L. Ed. 2d 981, 88 S. Ct. 854; *United States v. Mackiewicz* (2d Cir. 1968), 401 F.2d 219, *cert. denied*, 393 U.S. 923, 21 L. Ed. 2d 258, 89 S. Ct. 253; *United States v. White* (2d Cir. 1969), 417 F.2d 89; *United States v. Jaskiewicz* (3d Cir. 1970), 433 F.2d 415, *cert. denied*, 400 U.S. 1021, 27 L. Ed. 2d 632, 91 S. Ct. 582; *United States v. Browney* (4th Cir. 1970), 421 F.2d 48; *United States v. Bagdasian* (4th Cir. 1968), 398 F.2d 971; *United States v. Dawson* (5th Cir. 1973), 486 F.2d 1326; *United States v. Prudden* (5th Cir. 1970), 424 F.2d 1021, *cert. denied*, 400 U.S. 831, 27 L. Ed. 2d 62, 91 S. Ct. 62; *United States v. Stribling* (6th Cir. 1971), 437 F.2d 765, *cert. denied*, 402 U.S. 973, 29 L. Ed. 2d 137, 91 S. Ct. 1661; *United States v. Maius* (6th Cir. 1967), 378 F.2d 716, *cert. denied*, 389 U.S. 905, 19 L. Ed. 2d 219, 88 S. Ct. 218; *United States v. MacLeod* (8th Cir. 1971), 436 F.2d 947, *cert. denied*, 402 U.S. 990, 29 L. Ed. 2d 157, 91 S. Ct. 1659; *Cohen v. United States* (8th Cir. 1968), 405 F.2d 34; *United States v. Robson* (9th Cir. 1973), 477 F.2d 13; *Kohatsu v. United States* (9th Cir. 1965), 351 F.2d 898, *cert. denied*, 384 U.S. 1011, 16 L.Ed. 2d 1017, 86 S. Ct. 1915; *Hensley v. United States* (10th Cir. 1968), 406 F.2d 481 (dictum), but see *United States v. Lockyer* (10th Cir. 1971), 448 F.2d 417, 422 (dictum); *United States v. Beckwith* (D.C. Cir. 1975), 510 F.2d 741, *cert. granted*, 422 U.S. 1006, 45 L. Ed. 2d 668, 95 S. Ct. 2627.

To the contrary are *United States v. Oliver* (7th Cir. 1974), 505 F.2d 301, and *United States v. Dickerson* (7th Cir. 1969), 413 F.2d 1111, which held that full *Miranda* warnings must be given by the Intelligence Division agent of the Internal Revenue Service on the occasion of his first contact with the taxpayer.

A compromise position had been taken by a district court in the Tenth Circuit. *United States v. Wohler* (D. Utah 1973), 382 F. Supp. 229, held that, while full *Miranda* warnings were not required to be given to a taxpayer under criminal investigation but not in physical custody, fundamental fairness required that the modified *Miranda* warnings set forth in the Internal Revenue Service news releases be given in such cases.

In light of the Supreme Court's grant of certiorari in *Beckwith*, we have deferred issuing our opinion until now. *Beckwith v. United States*, 44 L.W. 4499 (#74-1243 decided 4/21/76), compels us to reverse the order of the trial court suppressing evidence against Myers.

In *Beckwith*, Internal Revenue agents interviewed the taypayer in a private home where he occasionally stayed and immediately thereafter with his consent at his place of business. The agents identified themselves as agents from the Intelligence Division and stated that the function of their investigation involved potential criminal liability. Pursuant to a rule

of the Internal Revenue Service, they also gave Beckwith a "modified *Miranda* warning" stating: (1) that he had the right not to incriminate himself; (2) that any incriminating statement or information could be used against him; and (3) that he had the right to consult with an attorney before responding. Beckwith admitted that he had not been coerced. Nevertheless, the agents acquired from Beckwith information which incriminated him. The Supreme Court held per Chief Justice Burger that *Miranda* warnings are not constitutionally necessary except in a custodial interrogation or in an interrogation in which the suspect is otherwise deprived of his freedom of action in any significant way. (*Cf. Mathis v. United States* (1968), 391 U.S. 1, 20 L. Ed. 2d 381, 88 S. Ct. 1503.) Furthermore, in a noncustodial interrogation, whether no warnings or some warnings were given (such as the "modified *Miranda* warnings" herein) is relevant only on the issue of whether the questioning was in fact coercive when that issue has been raised by a claim that it was. The court stated:

> "We recognize, of course, that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of * * * law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not fully self-determined * * *.' *Rogers v. Richmond*, 305 U.S. 534, 544 (1961). When such a claim is raised, it is the duty of an appellate court, including this court, 'to examine the entire record and make an independent determination of the ultimate issue of voluntariness.' *Davis v. North Carolina*, 384 U.S. 737, 741-742 (1966). Proof that some kind of warnings were given or that none were given would be relevant evidence only on the issue of whether the questioning was in fact coercive. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *David v. North Carolina, supra,* at 740-741 (1966)."

Justice Marshall concurred in the judgment solely on the ground that the modified *Miranda* warning had been given and that the warning met the Fifth Amendment requirements; had that warning not been given, he would not join in the judgment of the Court. Justice Brennan, dissenting, agreed with the Court of Appeals for the Seventh Circuit (in *Dickerson* and in *Oliver*) that custody is not the only factor which gives use to the need for *Miranda* warnings. Rather, *Miranda* warnings should be given whenever interrogation is conducted in surroundings where the practical compulsion to respond is comparable to the psychological pressures described in *Miranda*.

In any event, it is clear that, under *Beckwith*, neither *Miranda* nor modified *Miranda* warnings need be given before interrogating a taxpayer under investigation—even if the investigation is oriented to

potential criminal charges—where he is not in custody and where there is no issue of coercion. Hence, the decision of the circuit court must be reversed and the cause remanded for further proceedings.[1]

---

[1] We note that under *United States v. Miller* (1976), 44 L.W. 4528 (4/21/76, #74-1179), the Department of Revenue's subpoena of Myers' bank records is not a denial of fourth amendment rights.

Reversed and remanded.

STAMOS, P. J., concurs.

Mr. JUSTICE DOWNING, dissenting:

In my opinion the facts in this case are not sufficiently comparable to the facts in *Beckwith v. United States*, 44 L.W. 4499 (74-1243, decided April 21, 1976). As explained below I do not believe we are compelled to apply *Beckwith*. Therefore, I respectfully dissent.

In *Beckwith* there can be no doubt that a special agent of the Internal Revenue Service warned the taxpayer of the nature of the investigation and of his rights, although not in the exact language of the *Miranda* warnings. On the other hand, in the instant case there was absolutely no warning or caution resembling the *Miranda* warnings given by either auditor Whitlock or investigator Lynn that their visit could lead to a prosecution for filing fraudulent Retailers' Occupation Tax returns.

Although both cases have no custodial problem as involved in *Miranda*, I agree with Justice Brennan in his dissenting opinion in *Beckwith* that custody is not the only factor that gives rise for the need of *Miranda* warnings.[1]

Chief Justice Burger, writing for the majority, pointed out that "[a]n interview with government agents in a situation such as the one shown *by this record* simply does not present the elements which the *Miranda* Court found so inherently coercive as to require its holding." (44 L.W. 4499, 4501.) (Emphasis supplied.) An objective reading of "the record"—as set forth in the opinion—in *Beckwith* could obviously lead to the conclusion that with the warnings that had been given by the special agent at the start of the interview, there was no coercion. In fact the *Beckwith* majority opinion then states: "[p]roof that some kind of warnings were given or that none were given would be relevant evidence only on the issue of whether the questioning was in fact coercive." The instant case has a record which differs from *Beckwith* as day differs from night.

So far as we can determine, the precise question raised in the instant case has not been decided by the Illinois Supreme Court. Thus we are faced with the question of whether this court is obligated to follow the

---

[1] For another interesting discussion of the *Miranda* warnings and grand jury witnesses, see *United States v. Mandujano*, 44 L.W. 4629 (74-754, decided May 19, 1976), and Justice Brennan's concurring opinion.

United States Supreme Court in *Beckwith*. That case involved the Fifth Amendment of the United States Constitution. In *Myers* we are concerned with article I, section 10, of the 1970 Illinois Constitution which reads: "No person shall be compelled in a criminal case to give evidence against himself nor be twice put in jeopardy for the same offense."

In *Ray Schools-Chicago-Inc. v. Cummins* (1957), 12 Ill. 2d 376, 381, 146 N.E.2d 42, when discussing this issue, our supreme court said: "Still other cases hold that where Federal questions are not involved, as where State constitutions and statutes are to be construed, State courts are not required to follow Federal court decisions although they may be persuasive. [Citations.] Thus it is held that State courts are free to decide for themselves all questions of the construction of State constitutions and statutes and are not bound by the construction arrived at by a Federal court, even though that court is the Supreme Court of the United States. [Citations.]" (See also 21 C.J.S. Courts §205 (1940); *Bunnell v. Superior Court of Santa Clara County* (1975), 13 Cal. 3d 592, 119 Ca. Rptr. 302, 531 P.2d 1086; *Paul v. Allied Dairymen, Inc.* (1962), 209 Cal. App. 2d 112, 25 Cal. Rptr. 595.) As the United States Supreme Court said in *Highland Farms Dairy, Inc. v. Agnew* (1937), 300 U.S. 608, 613, 81 L. Ed. 835, 840, 57 S. Ct. 549, "* * * a judgment by the highest court of a State as to the meaning and effect of its own constitution is decisive and controlling everywhere." In fact the United States Supreme Court has held it will decline to review State court judgments which rest on independent and adequate State grounds, even where the judgments also decide Federal questions. (*Henry v. Mississippi* (1965), 379 U.S. 443, 446, 13 L. Ed. 2d 408, 85 S. Ct. 564. In my opinion, our State courts have the right—and duty—to interpret our State constitution when considering whether certain actions are violative thereof. Illinois may offer more protection to its citizens than does the United States Supreme Court, but not less. We are not constrained from arriving at our own resolution of this significant problem.

When balancing the tension which may exist between protecting the rights of individuals and the right of the State under such circumstances as in this record, the constitutional rights of the individual should be protected. And the presence or absence of "coercion" in the strict technical sense should not be the decisive test. The threat of a tax investigation can be as mentally coercive as that resulting from police station custody. Investigation of tax matters can involve at least three possibilities: a civil assessment for back taxes due, a civil assessment for back taxes plus a civil penalty for fraud, or criminal prosecution. Thus, a taxpayer when initially confronted by Illinois Department of Revenue agents has no way of actually knowing which direction the investigation may take, nor is he told. On the other hand, investigations for murder,

armed robbery, rape, etc. focus immediately on a crime which has been committed and the suspect knows the crime being investigated.

In my opinion the *Beckwith* opinion overlooks the practical problems inherent in any tax investigation. Therefore, I feel we in Illinois should chart our own course and provide some protection for our citizens in this intricate area. *Cf.* Petersen, *Mathis v. United States, the Supreme Court and the Constitutional Rights of Taxpayers,* 57 Ill. B. J. 468 (1968-69).

The majority opinion in this case will be creating precedent which will give free rein to State of Illinois revenue agents in commencing criminal tax investigations. In my opinion we are authorizing the State to compel and induce self-incriminating disclosures. I cannot see how the State of Illinois can be harmed by requiring proper warnings to be given to taxpayers prior to an examination.[2] I would affirm the judgment of the circuit court of Cook County.

---

[2] Myers, in his brief in this court, raised the question that the auditor and investigator of the State Revenue Department deprived him of the protections afforded by Illinois Revised Statutes, 1973, ch. 120, par. 448, which reads as follows:

"No person shall be excused from testifying or from producing any books, papers, records or memoranda in any investigation or upon any hearing, when ordered to do so by the department or any officer or employee thereof, upon the ground that the testimony or evidence, documentary or otherwise, may tend to incriminate him or subject him to a criminal penalty, but no person shall be prosecuted or subjected to any criminal penalty for, or on account of, any transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise, before the department or an officer or employee thereof; provided, that such immunity shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath. No person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying."

As the trial court suppressed the oral statements due to the lack of *Miranda*-type warnings and did not consider the application of the above cited statute, our opinion correctly makes no reference to that issue. However, it is pertinent to the subject of this dissent.