**UNITED STATES of America**

v.

**Frank A. JASKIEWICZ, Appellant.**

**No. 18387.**

United States Court of Appeals, Third Circuit.

Argued June 22, 1970.

Decided Sept. 28, 1970.

Certiorari Denied Jan. 25, 1971. See 91 S.Ct. 582.

Leonard, Sarner, Sarner, Cooper & Stein, Philadelphia, Pa., for appellant.

Joseph H. Reiter, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

**416**

Before WINTER,* ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from a sentence following a jury verdict of guilty on one count of a four count indictment charging appellant with attemping to evade a portion of his income tax for the years 1960 through 1963. Appellant was found guilty with respect to the year 1960 and not guilty with respect to each of the other years. He contends that his conviction should be set aside for two reasons:

(1) After his tax returns were assigned to a Special Agent of the Intelligence Division, the Internal Revenue Service was obliged to give him a full *Miranda* warning before obtaining any information from him. The warning actually given was incomplete in that it failed to advise him of his right to have counsel present at any interrogation.

(2) The evidence used against him was unconstitutionally obtained by misrepresentation, fraud and deceit as to the criminal nature of the tax investigation even before the assignment of the case to the Intelligence Division.

Appellant, apparently because he was known as a professional gambling operator, was from February 18, 1961 to March 12, 1963, subjected to a Post Office Department Mail Cover. In 1962 he and others similarly situated were subject to a tax examination. The first step in that examination was a reference, in December, 1962, of his returns for the years 1957, 1958 and 1959 to Revenue Agent Daniels of the Audit Division. The assignment was accompanied by no special instructions and was made routinely through the usual audit channels. Because Daniels had returns of other taxpayers assigned to him, he did not begin his audit of appellant's returns until March of 1963. On March 26, 1963, Daniels first met with appellant at his place of business. Appellant answered some questions, declined to answer others, and directed Daniels to Allen Speiser, his accountant, for certain information. On April 16, 1963, Daniels again called on appellant, who again answered some questions, declined to answer others, and referred the Revenue Agent to his accountant. In July of 1963, the 1960 tax return was also assigned to Daniels.

On April 14, 1964, the Revenue Agent, having observed unexplained bulges of net worth, referred appellant's returns to the Intelligence Division for investigation. Under standard Internal Revenue Service procedures when in the course of a civil examination a Revenue Agent assigned to the Audit Division suspects a potential criminal violation, that Division is required to refer the file or case to the Intelligence Division, the criminal investigating arm of the Service.

The Intelligence Division assigned appellant's file to Special Agent Maser, who reviewed the facts and determined that they warranted further investigation. Maser's first step in that investigation after April 14, 1964, was to call on Allen Speiser, appellant's accountant, who had prepared and signed a number of the tax returns. Maser identified himself to Speiser as a Special Agent and advised that he was there to determine whether there was a fraudulent understatement of income.

Speiser arranged for a meeting between Maser and Daniels, and the appellant, at appellant's office on June 11, 1964. Maser and Daniels attended. Maser advised appellant that under the Constitution he was not required to make any statements or furnish any information which might incriminate him under any federal law. Appellant responded that he understood these rights and that he had nothing to hide. He was

* Circuit Judge of the Court of Appeals for the Fourth Circuit, sitting by designation.

asked to give a statement under oath and declined.

Prior to June 11, 1964, Revenue Agent Daniels had not given appellant any Fifth Amendment warning. Daniels had not, however, questioned appellant between April 14, 1964, when he referred the case to the Intelligence Division, and June 11, 1964.

Neither on June 11, 1964, nor at any time thereafter, did either agent advise appellant of his right to have counsel present. Appellant was, however, on June 11, 1964, and at all times pertinent to the investigation, represented by retained attorneys. At a subsequent meeting on January 8, 1965, he referred the agents to those attorneys for certain information. At another meeting on March 1, 1965, when the agents requested the execution of consent forms for an extension of the statute of limitations (Form 872), appellant telephoned his attorneys and arranged to meet with them to discuss execution of these forms. On March 12, 1965, he again referred the agents to his attorneys for certain information. The agents never spoke to the attorneys to whom they had been referred because those attorneys never filed with the Internal Revenue Service the required powers of attorney.

All meetings between appellant and the Revenue and Special Agents took place during normal working hours, at the appellant's own telephone-equipped office, with other friendly persons, including appellant's son-in-law, on the premises on each occasion. Neither agent carried firearms or handcuffs during the interview, and according to the testimony of Maser, questions were put to appellant in a gentlemanly and conversational tone, more moderate than that of defense counsel in his cross-examination.

There is no contention that appellant's statements to either agent were in fact involuntary. Rather, it is contended that evidence obtained as a result of interrogation of appellant after the case

was referred to the Intelligence Division was inadmissible, since the warning given by Agent Maser did not fully comply with the *Miranda* formula. 384 U.S. 436, 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The argument is that *Miranda* applies once the defendant has become the focus of a criminal investigation, and that this occurred when on April 14, 1964 the case was transferred to the Intelligence Division.

The indictment was handed up in this case on November 22, 1966, five months after the *Miranda* decision. The trial took place beginning on March 25, 1967. Thus, if questioning by the Special Agent falls within *Miranda* the exclusionary rule of evidence probably would apply even though the interrogations took place prior to the *Miranda* decision, see Johnson v. New Jersey, 384 U.S. 719, 721, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); although an argument could be made that administrative practices followed, as here, in reliance on prior law justified admission of the evidence as a matter of judicial discretion. See, e.g., Jenkins v. Delaware, 395 U.S. 213, 218, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); United States v. Dickerson, 413 F.2d 1111, 1117 (7 Cir. 1969). We do not reach that issue, however, for we hold that in the circumstances of this case *Miranda* did not mandate exclusion of the evidence to which appellant objects.

Appellant relies on the decision of the Seventh Circuit in United States v. Dickerson, *supra,* in support of his contention that once the Intelligence Division is in the picture a taxpayer must be given full *Miranda* warnings. That case so holds, but every other circuit to which the contention has been made,

including the First,[1] the Second,[2] the Fourth,[3] the Fifth,[4] the Sixth,[5] the Eighth,[6] the Ninth[7] and the Tenth,[8] it has been rejected. This court has not previously considered the matter.[9]

Each of those circuits which have rejected appellant's contention have held that the crucial element for the application of the exclusionary rule of evidence announced in *Miranda* is the restraint on freedom of action arising from custody. The Seventh Circuit rejects the restraint on freedom of action test. It reasons:

> We understand the teaching of *Miranda* to be that one confronted with governmental authority in an adversary situation should be accorded the opportunity to make an intelligent

decision as to the assertion or relinquishment of those constitutional rights designed to protect him under precisely such circumstances. No contention is made that the privilege against self-incrimination does not protect one interrogated in a non-custodial setting, only that one in such circumstances has no need of advice as to his rights, or, indeed, of the pendency of a criminal investigation at all. But custodial interrogation is merely one variety of confrontation, albeit one requiring the most stringent of protections for the criminal suspect. The inquiry does not end with custody or its absence.

United States v. Dickerson, *supra*, 413 F.2d at 1114.

1. Taglianetti v. United States, 398 F.2d 558, 561 (1 Cir. 1968), aff'd, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969) ; Spinney v. United States, 385 F.2d 908, 910 (1 Cir. 1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968) ; Schlinsky v. United States, 379 F.2d 735, 738 (1 Cir.), cert. denied, 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967) ; Morgan v. United States, 377 F.2d 507, 508 (1 Cir. 1967).

2. United States v. White, 417 F.2d 89, 91 (2 Cir. 1969), cert. denied, 397 U.S. 912, 90 S.Ct. 910, 25 L.Ed.2d 92 (1970) ; United States v. Marcus, 401 F.2d 563, 566 (2 Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969); United States v. Mackiewicz, 401 F.2d 219, 223 (2 Cir.), cert. denied, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968) ; United States v. Dawson, 400 F.2d 194, 206 (2 Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969) ; United States v. Squeri, 398 F.2d 785, 788–790 (2 Cir. 1968).

3. United States v. Bagdasian, 398 F.2d 971, 973 (4 Cir. 1968) ; United States v. Mancuso, 378 F.2d 612, 619, modified on other grounds, 387 F.2d 376 (4 Cir. 1967), cert. denied, 390 U.S. 955, 88 S.Ct. 1051, 19 L.Ed.2d 1149 (1968).

4. United States v. Jernigan, 411 F.2d 471, 472 (5 Cir.), cert. denied, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 225 (1969) ; Agoranos v. United States, 409 F.2d 833, 835 (5 Cir.), cert. denied, 396 U.S. 824, 90 S.Ct. 67, 24 L.Ed.2d 75 (1969) ; Thomas v. United States, 370 F.2d 96 (5 Cir.

1966), cert. denied, 386 U.S. 975, 87 S.Ct. 1164, 18 L.Ed.2d 133 (1967).

5. United States v. Maius, 378 F.2d 716, 718–719 (6 Cir.), cert. denied, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967).

6. Muse v. United States, 405 F.2d 40, 41 (8 Cir. 1968), cert. denied, 393 U.S. 1117, 89 S.Ct. 992, 22 L.Ed.2d 122 (1969) ; Cohen v. United States, 405 F.2d 34, 40 (8 Cir. 1968), cert. denied, 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478 (1969) ; Frohmann v. United States, 380 F.2d 832, 835–836 (8 Cir.), cert. denied, 389 U.S. 976, 88 S.Ct. 478, 19 L.Ed.2d 469 (1967).

7. United States v. Chikata, 427 F.2d 385 (9 Cir. 1970) ; Spahr v. United States, 409 F.2d 1303, 1304–1305 (9 Cir.), cert. denied, 396 U.S. 840, 90 S.Ct. 102, 24 L.Ed.2d 91 (1969) ; Feichtmeir v. United States, 389 F.2d 498, 504 (9 Cir. 1968); Selinger v. Bigler, 377 F.2d 542 (9 Cir.), cert. denied, 389 U.S. 904, 88 S.Ct. 212, 19 L.Ed.2d 218 (1967) ; Rickey v. United States, 360 F.2d 32, 33 (9 Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 69 (1966) ; Kohatsu v. United States, 351 F.2d 898, 902 (9 Cir. 1965), cert. denied, 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966).

8. Hensley v. United States, 406 F.2d 481, 484–485 (10 Cir. 1969).

9. The United States District Court for the Middle District of Pennsylvania adopted the focus test rather than the custody test in United States v. Gower, 271 F.Supp. 655, 660 (M.D.Pa.1967). That case did not reach this court.

This reasoning does not persuade us. The issue is not whether or not the Fifth Amendment applies in a non-custodial setting. It is whether or not the affirmative duties imposed upon governmental agencies by *Miranda* arise by virtue of the defendant's being a potential target of an indictment, or arise by virtue of the fact that a governmental agency has in some meaningful way subjected him to physical, or perhaps psychological, restraint. We are persuaded that those duties arise not because the defendant has become the focus of a potential indictment but because the government has in some meaningful way imposed restraint on his freedom of action. Our holding in United States v. Fioravanti, 412 F.2d 407, 413 (3 Cir.), cert. denied, 396 U.S. 837, 90 S. Ct. 97, 24 L.Ed.2d 88 (1969), that statements made while in custody to persons not connected with the government do not fall within *Miranda*, implies as much. *Miranda* deals with governmental conduct toward persons whom the government has subjected to restraint.

In Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), the Supreme Court applied *Miranda* to exclude evidence in a criminal tax fraud trial of statements obtained by an Audit Division Revenue Agent from the defendant at a time when he was in the custody of the State of Florida on an unrelated charge. The Court rejected the Government's contention that because the tax investigation had not yet changed from civil to criminal *Miranda* did not apply. Its opinion reiterated that it was the possible compulsion arising from custody—any custody—which was the policy basis of *Miranda*. The absence of a criminal focus was irrelevant.

In Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), again, the Court emphasized that custody was the key. In that case the interrogation took place in the defendant's bedroom at 4 a.m. by officers who had arrested him there. Justice Black for the Court wrote of *Miranda*:

But the opinion iterated and reiterated the absolute necessity for officers interrogating people "in custody" to give the described warnings.

Orozco v. Texas, *supra* at 326, 89 S.Ct. at 1097.

*Miranda* has in *Mathis* and *Orozco* been made applicable to custodial situations outside the police station. But the rule still deals with the government's duty in a custodial situation, and imposes an obligation on the courts to enforce that duty by an exclusionary rule of evidence.

This is not to say that forms of compulsion other than custody, or absent custody, are irrelevant for Fifth Amendment purposes. Clearly they are relevant, and some of such non-custodial forms of compulsion to waive the privilege against self-incrimination are of constitutional dimensions. See, e.g., Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). Undoubtedly there is some degree of compulsion upon a taxpayer to cooperate with the Internal Revenue Service merely from the fact that civil remedies exist for the enforcement and collection of taxes. Undoubtedly that psychological compulsion increases somewhat when a taxpayer is made aware of possible criminal sanctions. But the compulsion to attempt to avoid criminal sanctions by testimony is not such as to violate the Fifth Amendment, Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); and in any event the standards for weighing such non-custodial compulsions are not those of *Miranda*. Rather, they are those discussed in United States v. Kordel, 397 U.S. 1, 90 S. Ct. 763, 25 L.Ed.2d 1 (1970), and DeVita v. Sills, 422 F.2d 1172 (3 Cir. 1970). Appellant here was subjected to the psychological pressure resulting from dealing with the Revenue and

Special Agents, and elected to cooperate. Kordel's codefendant was subjected to the psychological pressure resulting from a civil lawsuit brought by the Food and Drug Administration, and elected to answer interrogatories. Just as the Food and Drug Administration was not required to serve a *Miranda* warning with the interrogatories, the agents were not required to give such a warning here, so long as appellant remained free of any form of restraint upon his freedom of action. Cases may arise in which, in a tax collection context, the penalties for asserting the privilege against self-incrimination become so great that the teaching of Gardner v. Broderick, *supra*; Spevack v. Klein, *supra*; and Garrity v. New Jersey, *supra,* should be applied. This is not such a case. Cases may arise in which the conduct of the government agents is such as to amount to the equivalent of custodial compulsion, as in Orozco v. Texas, *supra*. This is not such a case. Cases may arise in which the pressures exerted or promises made by Revenue Agents or Special Agents may make the statements of the defendant taxpayer actually involuntary. This is not such a case.

■ In short, the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not require that this court in this case depart from its pre-*Miranda* rule that the sole test for admissibility of a taxpayer's statements to agents of the Treasury Department is the voluntariness of the statements. United States v. Frank, 245 F.2d 284 (3 Cir.), cert. denied, 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35 (1957); United States v. Burdick, 214 F.2d 768, 773 (3 Cir. 1954), cert. denied, 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742 (1955).[10]

■ In support of his second contention, that the agents obtained evidence by misrepresenting the nature of the tax investigation as civil rather than criminal, appellant relies on three factors. First, he was subjected to a Post Office Department Mail Cover from February 18, 1961, to March 12, 1963. Second, Revenue Agent Daniels' office was located in close physical proximity to the offices of the Intelligence Division. Third, agent Daniels' audits were part of an "organized crime drive". These factors were advanced unsuccessfully to the district court in a pre-trial motion for suppression of evidence, and again to the district court at the trial. They were also submitted to the jury with the charge:

" * * * Any information, papers, business books, records, documents or oral or written admissions which you find were obtained from the defendant or his accountant by Government agents by any fraud, force, persuasion, misrepresentation, trickery, or deceit, should not be considered by you against the defendant. It is for you to determine whether or not information or leads were obtained in this manner—that is for you, ladies and gentlemen—just as you must determine the reliability of the Government's computations to your satisfaction beyond a reasonable doubt.

■ The issue of fraud and deceit is relevant only with respect to the period prior to participation by the Intelligence Division, since at the first meet-

10. In News Release IR–949 dated November 26, 1968, the Service announced a revised procedure for advising a taxpayer of his rights during an investigation conducted by a Special Agent of the Internal Revenue Service, Intelligence Division. A Special Agent is now required to identify himself, describe his function, advise the taxpayer that anything he says may be used against him, advise the taxpayer that he cannot be compelled to incriminate himself by answering any questions or producing any documents, and advise the taxpayer.that he has the right to seek the assistance of an attorney before responding. See Cohen v. United States, 405 F. 2d 34, 39 (8 Cir. 1968). We do not here decide the effect, in a post-November 26, 1968, situation of the failure of a Special Agent to follow the newly prescribed practice.

ing with appellant's representative, Speiser, the Special Agent disclosed a possible tax fraud charge. A mail cover was authorized by postal regulations then in force for both civil and criminal purposes.[11] Both agents testified they obtained no useful information from the mail cover. Agent Daniels testified his initial investigation was routinely civil, that his duties were entirely civil, and that the location of his office was a mere housekeeping matter for the Service. Moreover, Daniels never suggested that there would be no criminal charge, and he was dealing with a sophisticated, represented taxpayer. There was no affirmative duty on the part of the Government to disclose to appellant the extent and nature of its investigation. Hoffa v. United States, 385 U.S. 293, 303, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis v. United States, 385 U.S. 206, 209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). The jury in arriving at its general verdict determined the issue of fraud and deceit of the Revenue Agent adversely to the appellant, and where the record supports such determination we cannot go behind that verdict. Smith v. United States, 348 U.S. 147, 151, 75 S.Ct. 194, 99 L.Ed. 192 (1954).

The judgment of the district court will be affirmed.

11. A mail cover is the process by which a record is made of any data appearing on the outside envelope or wrapper of mail addressed to a person under such surveillance. The availability of this device has since been reduced. Postal Bulletin of June 17, 1965 re: Postal Manual, Subchapter 860, Part 861.