**UNITED STATES of America**

v.

**Vernon W. MATHEWS.**

**Crim. No. 70-291.**

United States District Court,
W. D. Pennsylvania.

Dec. 17, 1971.

Richard L. Thornburgh, U. S. Atty., Thomas A. Daley, Asst. U. S. Atty., for plaintiff.

Andrew J. Conner, Ritchie T. Marsh, Erie, Pa., for defendant.

## OPINION AND ORDER DENYING MOTION FOR NEW TRIAL OR JUDGMENT OF ACQUITTAL

KNOX, District Judge.

Defendant was found guilty by verdict of a jury of the crime of wilfully attempting to evade or defeat income taxes imposed upon his personal income for the years 1964, 1965, 1966 and 1967 under the provisions of 26 U.S.C. 7201.[1] He has filed Motions for a New Trial or Judgment of Acquittal claiming that the evidence was insufficient to convict him or was not sufficient to establish his guilt beyond a reasonable doubt and, in any event, he should be entitled to a new trial. Numerous trial errors are also claimed in the Motion for New Trial.

The evidence showed that defendant for some period of years had operated an IGA (Independent Grocers Association) supermarket in Edinboro, Erie County, Pennsylvania, which the evidence indicated became quite profitable. His income tax returns as filed for the years in question showed tax liability as follows:

|      | GROSS RECEIPTS | NET INCOME | INCOME TAX |
| ---- | -------------- | ---------- | ---------- |
| 1964 | $634,323.56    | $ 2,549.18 | $    0.00  |
| 1965 | $662,140.61    | $ 4,077.33 | $   61.07  |
| 1966 | $717,758.90    | $ 4,502.77 | $  482.64  |
| 1967 | $810,007.30    | $24,382.41 | $5,762.04  |

The government's evidence to establish defendant's guilt used the net worth method and was corroborated by a bank deposits analysis. The evidence by the net worth method indicated that as of December 31, 1963, an examination of defendant's assets showed he had a net worth of $217,447.72 and as of December 31, 1967, he had a net worth of $382,258.-92. Obviously, the net income as reported by the defendant on his returns did not account for this. Such a great increase in wealth in such a short period of time obviously could only be attrib-

uted to a large amount of income or gifts or inheritances. He further admitted to the agents that the only property he had ever inherited consisted of a few shares of stock in the First National Bank of Edinboro. Defendant took the stand himself and did not attempt to explain the tremendous increase in net worth by inheritance or by gifts. Due allowance was made by the government for increases in market values of securities during the years in question and this also failed to explain the reason for the increase.

Defendant's explanation was that some time in the year 1965 or 1966, he became aware of the fact that there was a great amount of unaccounted for cash and of a great increase in his assets and finally came to the conclusion that the cash registers in his store were only picking up a total of certain types of transactions and not giving a daily grand total of all the sales in the store. These sales, as required by Pennsylvania Sales Tax Regulations, were broken down into taxable items and non-taxable items such as food. Notwithstanding this, the defendant made no complaint to the cash register distributor who sold him the machines that he was not getting the daily grand total of all transactions. The dealer who sold him the cash register testified in behalf of the defendant but did not claim that there was any mistake in the totals provided by the machines and gave no evidence as to complaints having been made or requests to rectify the situation.

It further appeared that defendant would take his cash register tapes home at the end of each day and enter the totals on a large sheet which was used at the end of the year to provide item I "gross receipts" on Schedule C (business income) attached to his income tax return. These sheets at the end of the

1. *"Attempt to evade or defeat tax*
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a fel-
   ony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution. Aug. 16, 1954, c. 736, 68A Stat. 851."

year were turned over to his accountant. The latter testified that from these sheets he prepared the income tax returns in question. Immediately upon transcribing the totals from each days sales onto the larger sheets, defendant admitted he destroyed the tapes so that there was no tangible evidence to support the daily totals entered upon the larger sheets. The evidence also showed that the total gross receipts as entered on the federal income tax returns did not correspond with the gross receipts as shown upon the reports required for Pennsylvania Sales Tax purposes. It also appeared that defendant paid out large amounts of cash for the purchases of securities, for the purchase of life insurance and other assets during the years in question. The jury was, therefore, entitled to infer that defendant had destroyed his cash register tapes so that no evidence existed to support the figures shown on the larger sheets which were used for preparing the income tax returns, and that defendant did this deliberately as a part of his scheme to evade taxes. Support for the necessary finding of a wilful attempt to evade taxes was to be found in the following ample evidence.

1. His business background and training at Edinboro State College and Erie Commercial College.

2. His never having bothered to reconcile cash in the register with the tape totals, although he knew how, and his continued daily destruction of the tapes even after "sensing something wrong". The routine audit in 1961 mentioned by taxpayer furnished no justification for this and certainly no estoppel would run against the government on this, particularly in the absence of complete knowledge of the facts.

3. His never having contacted the seller of the cash registers, the National Cash Register Company, regarding "the sales he felt he was missing."

4. The financial statements he presented his bank which disclosed his awareness of yearly increases in his net worth far exceeding the taxable income reported on his returns.

5. His extensive use of cash, although possessing both business and personal checking accounts, to make considerable expenditures; cash payments by him for just one insurance premium, that to the Lutheran Brotherhood, substantially exceeded the taxable income he reported in 1964, 1965, and 1966 (Government Exhibit 70).

6. The false Pennsylvania Sales Tax Returns he filed from September 1965 through July of 1967 and again in December of 1967.

Defendant testified that he was too busy to reconcile cash. Reconciliation of cash with sales as shown on the cash registers would certainly be a normal method for any prudent business man to follow to determine if mistakes were being made by employees or if there was dishonesty or whether the machines themselves were accurate.

He did not attempt to file amended returns or report this matter to the internal revenue agents who later began to question him about his returns.

■■ From this brief recital of the evidence, it is the opinion of the court that the jury was rightly justified in determining that defendant had wilfully attempted to evade or defeat his income taxes. He was thus properly convicted on all four counts of the indictment. As the net worth method does have possible objections, it should be used with great caution. See Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202. The jury was so instructed.[2] Nevertheless, the evi-

---

2. Transcript of trial, pg. 723. "Now, because the net-worth method of proving an unreported income is arrived at by comparing the net-worth of the defendant at the beginning and at the end of the year, the result cannot be accepted as correct, unless the beginning or starting point is reasonably accurate. The proof need not show the exact value of all assets owned by the defendant

dence in the instant case was so overwhelming, it is difficult to see how the jury could come to any other conclusion.

Use by the agents of the so-called bank deposit and expenses method also pointed inevitably to the same conclusion with only a small difference in unreported income for each year. Even if the net worth method was not substantiated, the other method likewise justified conviction.

For these reasons, the Motion for Judgment of Acquittal will be denied.

We will now turn to the specific grounds urged for grant of new trial.

*Ground 1. Lack of Proof of Wilfulness.*

The defendant asserts that the government failed to establish a Section 7201 violation for each indictment year as its proof did not show that the defendant wilfully and with specific intent, attempted to evade the taxable income due and owing the government in each of the years in question. The defendant further asserts that the government failed to offer corroborative evidence as to the defendant's opening cash as of December 31, 1963, knowing that defendant in the conduct of his business required and held substantial amounts of cash.

██ In examining the evidence together with all inferences reasonably and logically deducible therefrom, it must be viewed in the light most favorable to the government since the jury returned a verdict of guilty as to all four counts. United States v. Minker, 312 F.2d 632 (3d Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978.

██ What we have previously said in denying the Motion for Judgment of Acquittal applies equally to this ground

for new trial. Further, taxpayer's understatement to the Pennsylvania Department of Revenue disclosed his "attitude toward the reporting and payment of taxes generally". United States v. Taylor, 305 F.2d 183 at page 185–186 (4 Cir. 1962), cert. denied, 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126. In addition, the defendant's repetition of the same pattern of substantial understatements for four consecutive years justifies the inference that his conduct was intentional rather than inadvertent. United States v. Frank, 245 F.2d 284 (3d Cir. 1957). Such consistent understatement of income is some evidence of wilfulness. United States v. Alker, 260 F.2d 135 (3d Cir. 1958). As stated in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954):

> "The petitioners contend that willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income'. This is a fair statement of the rule. Here, however, there was evidence of consistent patterns of underreporting large amounts of income, and of the failure on petitioner's part to include all of their income in their books and records. Since, on proper submission, the jury could have found that these acts supported an inference of willfulness, their verdict must stand."

While the question of whether defendant's admitted failure to pay substantial taxes for the indictment years were wilful is a question of fact for the jury, such wilfulness may be inferred from acts and circumstances as well as from direct proof. United States v. Magnus, 365 F.2d 1007 (2d Cir. 1966); Gaunt v. United States, 184 F.2d 284 (1st Cir.

at the starting date, but the evidence must show beyond a reasonable doubt that all the assets owned by the defendant at the starting date are insufficient to account for the subsequent increases in his net-worth as shown by the evidence. . . ."
The court at page 746 further affirmed defendant's Request for Instruction No.

22 as follows: "Because the net-worth theory of analysis is so fraught with danger to the innocent, the court must carefully scrutinize its use." This is affirmed with the modification, "however, here, the Government has relied not only on the net-worth theory, but also on the bank deposit method."

██

1950); United States v. Brown, 446 F.2d 1119 (10th Cir. 1971). Such wilfulness may be inferred from conduct, the likely effect of which is to conceal. While the element of wilfulness must exist independently the "requisite proof may take a wider range than is normally allowed in support of annexed issues, otherwise, there would often be no means to disclose the purpose of the act in which the very gist of the offense may consist." United States v. Alker, supra, 260 F.2d at p. 148. A recent opinion from the Third Circuit has enumerated findings suggesting fraud: "repeated and substantial understatement of income; an abject failure to keep adequate books and records, misstatements to revenue officers regarding cash reserves at the beginning of the investigated period; excessive dealings in suspiciously large amounts of cash; and a basic lack of credibility in taxpayer's account of the alleged cash hoard." Mazzoni v. Commissioner of Internal Revenue, 451 F.2d 197, Third Circuit, opinion filed November 29, 1971. "Tax evaders seldom leave tracks and therefore circumstances can be convincing. Though an isolated erroneous tax figure cannot be escalated or pyramided into fraud, a confraternity of similar errors can take on more sinister tax aspects". Webb v. Commissioner of Internal Revenue, 394 F.2d 366 at p. 380 (5th Cir. 1968).

■■■ Since it is a well established rule that a defendant may not be convicted solely on his own admissions, such admissions require corroboration. The requisite corroboration may be of two types i. e. separate evidence tending to demonstrate the truth of the specific fact admitted or evidence tending independently to show that the evasion was attempted and that the defendant was responsible. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, 194 (1954).

■ In the instant case, it was incumbent on the government to offer corroborative evidence of the defendant's opening cash as of January 1, 1964. In their opening net worth statements the government allowed an opening cash figure of $10,000 as of January 1, 1964. Agent Ruggiero's summary revealed expenditures in cash and from unknown sources totalling as follows (trans. pp. 329–330):

|  | UNKNOWN SOURCES | CASH |
|---|---|---|
| 1964 | $23,038.48 | $ 2,150.00 |
| 1965 | $16,673.25 | $20,348.12 |
| 1966 | $ 6,630.42 | $22,363.18 |
| 1967 | $23,584.66 | $21,365.69 |

The above amounts dwarf by a substantial margin the taxable income reported by the defendant in each of those years. Thus, following the holding in the Smith case, supra, the court finds that there was independent corroboration resulting from the defendant's substantial expenditures, savings and investments which tended to show that he was underreporting his income during the prosecution years. Additional corroboration can be found in the defendant's testimony at trial [3] which was of a type similar to that found to be conclusive corroboration by the Supreme Court in United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954).

Further corroboration of the item of cash is found on defendant's own testimony at p. 572:

"Q. Can you give me an idea how much cash you may have had at your home at any one time?

A. Well, as business got heavier over the years, *you would have to figure eight to ten thousand dollars if you knew you was going over a long weekend.* (emphasis added)"

Even if we allow an additional $5,000 as mentioned by defendant on the stand, this will not affect in any substantial amount the tremendous unexplained increase in net worth.

*Ground 2.    Limitation of Testimony of Joseph Salvia.*

The defendant called an expert witness, Joseph Salvia, a Certified Public

---

3. Transcript of trial, pp. 572, 629–630.

Accountant, to testify as to the general weaknesses of the net worth income analysis and bank deposit expenditure method. This witness had not made either type of analysis himself with respect to defendant. Furthermore, the defendant's accounts payable, if any, were not in evidence, thus the proffered expert testimony would have been based upon matters not in evidence.

Two circuit courts have approved the preclusion of such proof when offered to demonstrate that, if a cash basis defendant (such as Mathews was) were to shift to an accrual basis of accounting, his unreported income would be diminished or eliminated. United States v. Vardine, 305 F.2d 60 (2d Cir. 1962); Clark v. United States, 211 F.2d 100 (8th Cir 1954). In Clark, at p. 105, the court reasoned that "it was indisputably clear that appellant had been reporting his income on a cash basis and not on an accrual basis, and that any hypothesizing of facts which had no probative basis was therefore wholly irrelevant and incompetent as a defense to the charge."

■■■ If Mr. Salvia had made a contrary analysis of the increase in defendant's net worth or his bank deposit expenditures, to combat the government's case, we would have been only too ready to receive his testimony. As a matter of fact, his failure to do so indicates that the government's case could not be combated.

*Ground 3. Depositions of Dr. Barclay.*

The defendant offered the deposition of Dr. Paul J. Barclay as evidence of defendant's medical condition. Dr. Barclay's depositions were taken during trial because he was leaving the city. The court properly sustained the government's objection to the admission of such evidence for four reasons. First, depositions are to be used in criminal cases only in exceptional circumstances; Rule 15 of the Rules of Criminal Procedure provides for the use of depositions where the "testimony is material and . . . is necessary . . . in order to prevent

a failure of justice . . . ." In the instant case, the movant failed to meet its burden of showing the necessity for this deposition. Secondly, the deposition indicates that the defendant was not a psychiatric patient and that Dr. Barclay had treated him for diabetes. The doctor is not a psychiatrist, but is a renowned specialist in internal medicine and diabetes. Thirdly, while the defendant reported occasional periods of insulin shock, Dr. Barclay had never seen the defendant in insulin shock in fifteen years of treatment. Finally, Dr. Barclay nowhere concluded that defendant fell within the Third Circuit test of criminal responsibility, i. e., that at the time of committing the offenses charged, "as a result of mental disease or defect, (he) lacked substantial capacity to conform his conduct to the requirements of the law." United States v. Currens, 290 F. 2d 751 (3d Cir. 1961).

The court stated on the record that his personal observation of defendant on the stand convinced him of no lack of mental capacity.

■■■ Dr. Barclay made clear he was not testifying as to defendant's mental condition. We would certainly respect his opinion at the time of sentence in mitigation, but if he had personally taken the stand during the trial, we would have had to preclude his testimony. It is incredible that defendant would be in insulin shock every time he signed a tax return or made a trip to Erie to purchase securities with cash.

*Ground 4. Admission of Summaries of Bank Deposits Analysis and Net Worth Analysis.*

■■■ The court properly admitted and sent to the jury the government's Exhibits 69 and 70, which were the expert witnesses' summaries of the bank deposits reconstruction and of the net worth analysis. These compilations were based solely on the evidence in the case and the jury was instructed that they were admitted only to aid their understanding of the complex evidence in the case. See Holland v. United States, 348

U.S. 121,[4] 75 S.Ct. 127, 99 L.Ed. 150 where the conviction was affirmed, despite introduction of such exhibits.

*Grounds 5 and 6. Admission of Income for Prior Years.*

No error was committed in the admission of government Exhibit 8, representing the defendant's income tax payments from 1946 to 1963 and the prosecutor's argument to the jury regarding it was entirely proper. Exhibit 8 was offered and received for the purpose of laying a foundation for Agent Blizman's testimony as to the maximum income the defendant could have earned, based upon the taxes that he paid from 1946 through 1963. Assuming that defendant spent nothing during this period but saved all his income plus the stock he owned and a gain on the sale of his residence, his total available funds would have been $113,826.73. Nevertheless, the government presented evidence that Mathews had a net worth as of December 31, 1963, in the amount of $217,447.72.

■ Since the government in a net worth case is required to negate any contention that the defendant acquired assets or made expenditures in the indictment years with wealth he accumulated in prior years either from sources on which he had already paid taxes or from non-taxable sources, such testimony was necessary to the government's case. See Holland v. United States, supra, where it was noted that the government had checked defendant's returns as far back as 1913 to show he could not have saved any appreciable amount of money.

■ In view of the startling difference between the two figures, the prosecutor's remark in his argument to the jury as to the obvious inference to be drawn from this difference was not improper. As stated in United States v. Polack, 442 F.2d 446 at p. 447 (3d Cir. 1971):

"To say that this remark would have a prejudicial effect on a jury which had listened throughout a long trial to the unfolding of the testimony is to attribute a stupidity and absence of common sense which is incredible in a federal jury."

■ Finally, the court instructed the jury to concern itself only with charges for the indictment years,[5] "while evidence has been introduced with respect to matters for prior years as background and information to determine net worth, you are only concerned with offenses for the years in question." It cannot be assumed that the jury disregarded such instructions. Such evidence was properly admitted to determine beginning net worth and negate the existence of any hoard of cash. That it also revealed intent, design and a past pattern of conduct is something to which we could not blind the jury.

"Now, in this connection, you should bear in mind and are entitled to consider the evidence as to the defendant's income tax returns, and his financial history in the years prior to 1964. These are to be considered by you only for such aid as they may give you in determining the taxable income for the years involved in this case. As I have previously instructed you, he is charged only for these four years, and you are not concerned with anything that might have occurred prior to that."

*Ground 7. Requested Instruction No. 10.*

■ No evidence was presented in this case that the defendant, Mathews, lacked mental capacity, or that his diabetic condition produced mental incapacity. In fact, defendant's demeanor while testifying at his trial indicated that he was quite rational and articulate. Thus, the court properly refused to give defendant's point for instruction No. 10. What we have previously said with respect to Ground No. 3, the deposition of Dr. Barclay, is also applicable here.

4. Note the Holland case is strikingly similar in that there the defendant had destroyed adding machine tapes.

5. Transcript, p. 717.

*Ground 8. Requested Instruction No. 11.*

█ The court properly refused to give defendant's point of instruction No. 11, which sought to inform the jury of the penalties specified for tax evasion upon conviction. It is not the province of the jury to be concerned with what maximum punishment the court can impose as set forth in the statute. To so inform a jury would be prejudicial to the government. These matters are committed to the courts by Acts of Congress.

*Ground 9. Lesser Included Offenses.*

█ The court correctly refused to charge the jury that it could acquit the defendant of income tax evasion, 26 U.S.C.A. 7201, and find him guilty of the lesser included offenses of wilful failure to pay or wilful filing of a false return under 26 U.S.C.A. 7203 or 7207. The Supreme Court ruled in Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L. Ed.2d 882 (1965) that a lesser included offense instruction is appropriate only where the charged greater offense requires the jury to find a disputed factual element not required for conviction of the lesser offense. Here, as in Sansone, there was no issue other than that of whether defendant's act in filing the tax returns was wilful. That the returns were false and resulted in a tax deficiency was undisputed.

As stated by the Supreme Court in Sansone at p. 352, 85 S.Ct. at p. 1010: "If his act was not willful, he was not guilty of violating either § 7201 or 7203." The court reasoned further at p. 353, 85 S.Ct. at p. 1011: "here, however, there is no dispute that petitioner's material misstatement resulted in a tax deficiency. Thus there is no disputed issue of fact concerning the existence of an element required for conviction of § 7201 but not required for conviction of § 7207." If the jury in the instant case found as it did, that the defendant's acts were wilful, Mathews was guilty of violating Section 7201 as well as Sections 7203 and 7207, and, therefore, no instruction as to lesser included offenses was required.

*Ground 10. Instruction on Absent Witness.*

The government did not call Agent Guzzy who was briefly assigned to the Mathews case and whose testimony would have been merely cumulative. Thus, Guzzy could not have given testimony that "would elucidate the transaction," Graves v. United States, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893).

█ Defense counsel was aware of Agent Guzzy's presence in the courtroom and could have called him as a witness if he believed that Guzzy had any testimony to give that might be favorable to the defendant. While the court permitted both defense and government counsel to comment in their summations to the jury on Guzzy's non-appearance as a witness, it properly refused the requested instruction No. 26 on the failure to call the witness in question. The Third Circuit has commented regarding the presumption in question as follows: "For obvious reasons of practicability, evidence which would be merely cumulative could not raise such a presumption." United States v. Restaino, 369 F.2d 544 (3d Cir. 1966). Nothing material which the agents who were called testified to could have been contradicted by Agent Guzzy. Anything Guzzy could have given evidence on was admitted by defendant when he took the stand. Failure to call Guzzy was, therefore, immaterial.

*Ground 11. Failure to Suppress Statements.*

Both Judge Weber, on the pretrial motion to suppress, and the trial judge correctly refused to suppress the non-custodial, voluntary statements and records of Mathews that he gave to the agents. The evidence revealed that the defendant was never arrested, placed in custody, or deprived of his freedom of action by the agents. The defendant, an intelligent businessman, was questioned by the agents either at his place of business, or as a convenience to him in their car parked outside.

The agents were not required to give Mathews the Miranda warnings. As pointed out in United States v. Jaskiewicz, 433 F.2d 415 (3d Cir. 1970), all circuits except the Seventh Circuit have rejected the contention that Miranda applies to non-custodial questioning of taxpayers by agents of the Internal Revenue Service. Thus, the sole question was whether the statement made by the defendant to the agents and the records he produced were given voluntarily. Jaskiewicz, supra; United States v. Wheeler, 275 F.2d 94 (3d Cir. 1960). Defendant took the stand but nowhere testified to any involuntariness on his part or any coercion or trickery by the agents.

Defense counsel argues that although Mathews was not in custody, the interview occurred during a "critical state" of prosecution and he was, therefore, entitled to the Miranda warnings and to counsel is entirely without merit. First, when Miranda warnings were given, defendant never indicated any wish to have counsel present. Second, at the time of the interview, defendant was neither under indictment nor was he arrested or charged or in custody and no prosecution was pending. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

*Other Grounds.*

Defendant was found guilty June 10, 1971. He reserved the right in paragraph 14 of his original New Trial Motion, filed June 14, 1971, to amend the same after reviewing the transcript of the trial. Defendant on June 25, 1971, filed Additional and Supplemental Reasons Supporting Defendant's Motion for New Trial; Motion for Acquittal. These additional and supplemental reasons are clearly untimely. Rule 33 of the Federal Rules of Criminal Procedure provides that " . . . a motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period." Rule 29(c) is as follows: "If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period."

Thus, not having secured additional time for the filing of such motions or additional reasons supporting the same by permission from the court within the seven-day period, the defendant's attempt to reserve the right to file such additions is a nullity. Timeliness of the filing of such motions or additional grounds therefore and the need for the granting of extensions are jurisdictional requirements. United States v. Laurelli, 187 F.Supp. 30 (M.D.Pa.1960); United States v. Kane, 319 F.Supp. 527 (E.D. Pa.1970). Nevertheless, this court has reviewed the additional matters raised and finds them entirely without merit.

This opinion is filed this 17th day of December, 1971, to state the reasons in support of the order denying defendant's motions heretofore filed on December 13, 1971.