**UNITED STATES of America**

**v.**

**Joseph E. BOSTIC, Jr. and Alton Henry Bradby.**

**Crim. No. 73–72.**

United States District Court,
E. D. Pennsylvania.

June 6, 1973.

Robert E. J. Curran, U. S. Atty., James C. Sommar, Asst. U. S. Atty., Philadelphia, Pa., for government.

Shaljian, Cammarata & O'Connor, Edward T. O'Connor, Jr., Jersey City, N. J., Nicholas J. Nastasi, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This is a motion for new trial on the basis of alleged newly discovered evidence. On March 12, 1973, defendants Joseph E. Bostic, Jr. (Bostic) and Alton Henry Bradby (Bradby) were convicted of the October 5, 1972, armed robbery of the Conshohocken Savings & Loan Association.[1] At their trial, important witnesses against them were Ethel Walker and Elaine Walker Allen, two sisters who testified that they had been

with defendants before the robbery and in fact drove the getaway car. Defendants filed motions for new trial and for judgment of acquittal which we denied by Memorandum Opinion and Order dated April 13, 1973, 360 F.Supp. 1300.

On May 3, 1973, we proceeded with a sentencing hearing. At that time, Edward T. O'Connor, Jr., Esq. (O'Connor), counsel for Bostic, represented to us that while Bostic was incarcerated in the Bucks County (Pennsylvania) Prison after trial, awaiting sentencing, he had obtained information indicating that others were in fact responsible for the Conshohocken Savings & Loan Association robbery. More specifically, O'Connor represented that one of Bostic's fellow inmates at the Prison was Silas Walker (Silas), the brother of Elaine Allen and Ethel Walker, and that Silas had told Bostic that the blame had been placed on Bostic and Bradby "because they were from out of state." Bostic thereupon told us that while in prison he had learned that a man named Frank DeJesus was one of the actual bank robbers. Bostic further stated that it was his belief that DeJesus's partner in the robbery was Elaine Allen, dressed like a male and wearing a floppy hat. Bostic compared Elaine Allen's build and complexion to his own. While it was not clear from the representations of Bostic or his counsel as to who was responsible for "framing" the defendants, we adjourned the sentencing hearing at that juncture and directed the government and defense to investigate Bostic's allegations. Bostic's counsel announced his intention to formally file a motion for new trial on the grounds of newly discovered evidence, and we stated that we would hold a hearing thereon as soon as the investigations were complete.[2]

> The court on motion of a defendant may grant a new trial to him if required in the interest of justice. . . . A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment . . . .

---

1. The case was tried to a jury which rendered verdicts of guilty against both defendants on each of the five counts charging them with violation of 18 U. S.C. § 2113(a), (b) and (d) (bank robbery) and 18 U.S.C. § 371 (conspiracy).

2. Rule 33 of the Federal Rules of Criminal Procedure provides, inter alia:

The motion was duly filed, and on May 24, 1973, we held a hearing. At that time, three witnesses were called by the defense: Bostic, Demetrius Lewis (Lewis), a counselor at Bucks County Prison at the time of Bostic's encounter with Silas, and William Mattero (Mattero), a Bucks County Prison inmate and Bostic's former cellmate. In support of his allegation that he was falsely implicated in the bank robbery, Bostic attempted to show the presence of a "common thread" in that he had been falsely implicated by the Walkers in two other crimes in the Philadelphia area—a burglary in Montgomery County and a robbery in Bucks County. The fount of Bostic's contentions about newly discovered evidence was his testimony that Silas Walker told him on several occasions, including one occasion in the presence of Lewis and Mattero, that he (Silas) had induced his sisters to implicate Bostic in the bank robbery in order to "take the heat off" his two sisters, himself, and a friend. According to Bostic, Silas said that he was "sorry about the whole mess" and "would try to clear it up if he could," and that he had acted as he had because Bostic lived outside Pennsylvania and he did not think the law enforcement authorities would catch up with him. Bostic testified that he now believed that Silas was one of the robbers. However, when pressed, he conceded that Silas did not admit the bank robbery except "indirectly." Mattero testified that he was present during certain conversations between Bostic and Silas and generally corroborated Bostic's testimony as to Silas's declarations.

Although at the sentencing hearing Bostic had claimed that Frank DeJesus and Elaine Allen were the bank robbers, he abandoned this contention at the time of the newly discovered evidence hearing, and, as noted, contended instead that the bank robbers were Silas and one of Silas's friends. At the hearing, Bostic testified that the man whom he had previously identified as Frank De-Jesus was actually named Jesus Rivera. Bostic then referred to an armed robbery of an establishment called the F & M Market and also known as the "Hoagie Hut" in Lacey Park, Warminster Heights, Bucks County, on October 14, 1972, with which he and Bradby had been charged and were awaiting trial. According to Bostic, he (and Bradby) had been "fingered" for the Hoagie Hut robbery by the Walker sisters, whereas the robbery was actually committed by Silas, Jesus Rivera, and the Walker sisters. Mattero testified at the hearing that he had in fact witnessed the Hoagie Hut robbery. He further testified that Jesus Rivera was one of the robbers, that he did not recognize the other male participant, and that the Walker sisters drove the getaway car. Mattero identified Jesus Rivera as a drug addict who was well known in Lacey Park and who often associated with the Walker sisters. Bostic testified that when, in the presence of Mattero and another inmate, he confronted Silas with the accusation that the Hoagie Hut robbery was actually committed by Silas and Rivera, Silas just stood there "dumbfounded." We take it that the inference sought to be drawn from this is an admission by silence by Silas that he was in fact the perpetrator.

Silas was subpoenaed by Bostic and was present in the courthouse during the May 24, 1973, hearing on Bostic's motion. Bostic's counsel was afforded an opportunity to interview Silas, and to see the statement taken from him by Agent Stockton of the F.B.I. Since it appeared that Silas might incriminate himself if called to testify, we appointed counsel to represent him. However, as it turned out, neither the government nor the defense called Silas.[3] Indeed, Bostic's counsel stated that he did not wish to call Silas because his testimony would not further Bostic's interests in any degree. Thus vanished the anticipation that Perry Mason might spring to life in the court-

---

3. Nor did anyone call either of the Walker sisters.

room with the startling witness-stand confession by the real culprit in the wake of the conviction of an innocent man. In addition, although afforded a week after the hearing to do so, Bostic advanced no proof that it was the Walker sisters or Silas who in fact had implicated him in the bank robbery, thus breaking the alleged common thread or skein.

Regardless of whether we are entitled to draw any inference from the failure of Silas Walker to testify, we do not credit the testimony of Bostic as to Silas's alleged declarations; indeed, we find his testimony incredible. It was also ephemeral, for whenever a critical point seemed in the offing, the testimony became terribly vague. Moreover, there was never any detailed testimony about the bank robbery. Indeed, Bostic's testimony was so vague that after persistent questioning we were not sure whether it was the bank robbery or the Hoagie Hut robbery that Silas allegedly had said Bostic and Bradby were falsely implicated in. Nor was Bostic's testimony as to Silas Walker's declarations buttressed by that of Mattero, who was equally vague and whom we do not credit either. We also have serious doubt as to the credibility of Mattero's testimony regarding the Hoagie Hut robbery. For instance, we are dubious that Jesus Rivera, who, as the testimony indicated, was so well known in Lacey Park, would commit a robbery of a business there in plain view of so many bystanders. In addition, the transcript of the preliminary arraignment in Bucks County (see note 4) contradicts Mattero's story. However, we need not make a finding on that point because the principal prop of Bostic's theory about the Lacey Park robbery was never estab-

lished by the evidence: *i. e.*, that he was "fingered" for the robbery by the Walker sisters. Rivera's involvement would make no difference to the question whether Bostic was falsely accused of the robbery.[4]

There was one other prong to Bostic's theory that he had been framed by Silas Walker and his sisters in an effort to absolve themselves of the bank robbery: Bostic's contention about a burglary in Montgomery County, Pennsylvania in which he had been implicated. Bostic testified that the Montgomery County charges against him were dropped when the Walker sisters failed to implicate him at a preliminary hearing. Again, however, although given an additional week after the hearing to do so, Bostic was unable to adduce any evidence that the Walker sisters had implicated him. Hence, all that stands on this record is that they came to his aid, and that does not help him here.

The most reliable person called by Bostic, and the one who might have made some impact in advancing Bostic's theory that he had been "framed," was Demetrius Lewis, the prison counselor. However, Lewis's testimony did not advance this theory in any respect. His only recollection on the subject was that Bostic had protested his innocence and that someone said that someone else did not commit a robbery; he could not recall who said what to whom. He did not testify that he recalled Silas Walker having made any statements such as those imputed to him.

In order to warrant the granting of a motion for new trial on the basis of newly discovered evidence, the following criteria must be met: (1) the evidence relied upon must not be merely

---

4. Defendants' case in the Hoagie Hut robbery is pending in the Court of Common Pleas of Bucks County. From an affidavit supplied to us after the May 24, 1973, hearing by Bostic's counsel, it appears that Bostic was identified by the Hoagie Hut's owner in a lineup and at a preliminary hearing as one of the robbers, indeed as the one who pointed a gun at his daughter's head during the robbery. He also identified Bradby as a participant. The notes of testimony of the preliminary hearing are attached to the affidavit as an exhibit. The affidavit implies that the identifications were impermissively suggestive; we understand that to be the reason the affidavit was submitted.

incriminating or impeaching, (2) the evidence must be material to issues involved in the previous trial, and (3) the evidence must be such that a new trial will probably result in an acquittal. United States v. Craft, 421 F.2d 693 (9th Cir. 1970); United States v. Rutkin, 208 F.2d 647 (3d Cir. 1953). Motions for a new trial on the ground of newly discovered evidence are to be granted with the greatest of caution and are generally not favored by the courts. United States v. Kozak, 438 F.2d 1062 (3d Cir. 1971). Since the defendants claim that injustice has been done and seek to have the result of the jury set aside, their motion must be sustained not as a matter of speculation but as a demonstrable reality. United States ex rel. Darcy v. Handy, 351 U.S. 454, 76 S. Ct. 965, 100 L.Ed. 1331 (1956). Moreover, on a motion for a new trial, evidence, along with all inferences reasonably and logically deducible therefrom, must be viewed in a light most favorable to the Government. United States v. Minker, 312 F.2d 632 (3d Cir.), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed. 2d 978 (1962); United States v. Mathews, 335 F.Supp. 157 (W.D.Pa.1971).

▮ The Court must first decide whether the evidence presented is credible. In this regard, the trial judge has broad discretion. United States v. Maddox, 444 F.2d 148 (2d Cir. 1971). As we have noted, we do not consider the evidence produced in support of the motion to be credible. We have discussed this question above; this conclusion stems not only from our failure to credit the testimony produced by Bostic at the May 24 hearing, but also from the inexplicable variance between the defendant's positions at the May 3 and May 24 hearings. However, even if the testimony were credible, it would not suffice. There is no testimony to the effect that Silas Walker confessed to the bank robbery. It is not even clear, as we have

noted, that he was talking about the bank robbery at all, since most of the testimony related to the Hoagie Hut robbery. Even if Silas's alleged statements were admitted at a new trial as a declaration against penal interest, they represent hearsay as to the act of perjury by his sisters, and they apparently would be contradicted by Silas if he were called. In view of the lack of a "confession," the evidence relied upon is probably impeaching only, and some of it should have been available before trial. As we view it (and see *infra*), that evidence is not sufficient in force that it would probably result in an acquittal if admitted at a new trial. We note in this connection the defense was already given broad leeway at the original trial in impeaching the Walker sisters,[5] so that the evidence would only have been cumulative. *See* United States v. Rutkin, *supra*.

▮ In evaluating the issue whether a new trial would probably produce an acquittal, we must consider the evidence introduced at trial. United States v. Memolo, 72 F.Supp. 747 (W.D.Pa. 1947). In our Memorandum Opinion denying the defendants' motion for new trial, we summarized that evidence and observed that the evidence was strong; that evidence included eyewitness identification in addition to the testimony of the Walker sisters. Our overview of the total evidence persuades us that the result at a new trial would most probably be the same. Moreover, the facts adduced concerning the Hoagie Hut robbery are not material to issues involved in the previous trial, particularly in the absence of evidence that the Walkers had "fingered" Bostic and Bradby for any crime; the common thread theory failed completely. Thus, the criteria for granting a new trial on the ground of newly discovered evidence, as set forth in United States v. Craft and United States v. Rutkin, *supra*, have not been met.

5. We permitted defense counsel to attack the credibility of the Walker sisters on the grounds that they themselves had been implicated in a number of other crimes including the robbery in Bucks County.

Following the May 24 hearing, Bradby submitted two affidavits from neighbors supporting the alibi which he had attempted through other neighbors to prove at trial. These affidavits are cumulative only and would not, in our view, affect the result at a new trial. In any event, they are not "newly discovered," for they would have been available through the exercise of due diligence at the time of trial. United States v. Rutkin, *supra*; United States v. Derosier, 141 F.Supp. 397 (W.D.Pa. 1950).

Being satisfied that defendants have not met their burden in connection with their motion for new trial on the ground of newly discovered evidence, and that their trial was fundamentally fair, we enter the following Order.

### ORDER

And now, this 6th day of June 1973, Defendants' motion for a new trial on the ground of newly discovered evidence is denied. Defendants shall appear for sentencing on Friday, June 15, 1973, at 9:30 a. m. in Courtroom 14.